Filed 2/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G048755 |
|       v. | (Super. Ct. No. 12HF2278) |
| DANA LEE RUSSELL WILSON, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge. Judgment affirmed in part, reversed in part, and remanded with directions.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine Gutierrez, Jennifer Truong and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Dana Lee Russell Wilson of one count of assault with a deadly weapon (count 1; Pen. Code, § 245, subd. (a)(1))[1] and three counts of making criminal threats (counts 2, 4, and 5; § 422). The jury further found that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) in connection with count 2, and that he committed a secondary offense while released on bail as to count 4 (§ 12022.1, subd. (b)). The court sentenced defendant to two years in prison on count 1 and concurrent 16 month sentences on counts 2, 4, and 5. The court struck the weapon allegation on count 2 and the out-on-bail allegation on count 4.

The only issue raised on appeal is whether defendant should have been convicted of and punished for two counts of making criminal threats (counts 4 & 5) based on a single 15 minute incident during which defendant continuously menaced the victim and (at least) twice threatened to kill the victim and his family. Defendant contends his behavior amounted to a single violation of section 422. We agree and therefore reverse defendant's conviction on count 5, but otherwise affirm the judgment.[2]

FACTS

In counts 4 and 5, the operative information accused defendant of willfully and unlawfully threatening (§ 422, subd. (a)) victim Fernando Rosales on December 29, 2012, causing Rosales "to reasonably be in sustained fear for his . . . safety and the safety of his . . . immediate family." The information did not distinguish between these two counts (e.g., by identifying disparate conduct as the basis for each count). The operative information also accused defendant of assaulting another victim with a deadly weapon

---

[1] All statutory references are to the Penal Code.

[2] Obviously, this reversal has little practical impact, as the court ordered the 16-month sentence imposed on count 5 to run concurrently with the two-year sentence imposed on count 1.

2

(count 1) and issuing criminal threats to him (count 2) on August 7, 2012. Due to the limited nature of defendant's appeal, we restrict our description of the facts to the December 29, 2012 incident involving Rosales.

*Evidence Regarding Counts 4 and 5*

On the night in question, Rosales and his wife returned home from purchasing groceries. They observed defendant standing in their yard, urinating on a tree. Rosales asked defendant to stop exposing himself, adding that his children could see what defendant was doing through the window of Rosales's home. Defendant responded, "Fuck off. Everyone has to take a piss." Defendant walked across the street as Rosales unloaded his groceries.

Defendant then turned around and began "blabbering" something as he approached Rosales. Rosales tried to ignore defendant, and told him to "keep going on your way. Have a good night." Defendant began yelling. Rosales's wife came back out of the house and told defendant to leave or she would call the police. Defendant called her "the B word" and said he was "not afraid" of the police. As Rosales started walking toward his house, defendant said, "I'm going to give you and your family the New Year's present. I'm going to kill you and all your kids and your family." Defendant was very loud and appeared to be angry. Rosales told his wife to go inside and call 911. When Rosales asked defendant what he said, defendant reached for something in his pockets, as if he might pull a weapon out of his clothes.

Rosales "saw he was drunk. . . . It didn't concern me too much. Once he started getting closer, it started concerning me more and more and more." Rosales was concerned for the safety of his wife and children at this point.

3

Rosales walked to his doorstep and took the phone from his wife. Defendant was yelling loudly. Both Rosales and his mother told defendant to leave. Defendant approached the doorstep and repeatedly said, "I'm going to kill you guys." At this point, Rosales feared for his life and for the lives of his family members. Defendant's mother also testified she was very frightened; defendant's statements affected her "more than if he had hit" her.

The police arrived. Defendant continued to yell and was uncooperative. He directed obscenities and derogatory racial comments at the police. The entire incident lasted approximately 15 to 20 minutes. Defendant acted "crazy" and unreasonably the entire time.

*Jury Instruction and Closing Argument*

The jury was instructed on counts 4 and 5 with a modified version of CALCRIM No. 1300. The jury instruction consistently referred to Rosales as the victim and did not attempt to differentiate between counts 4 and 5. The instruction included the following element: "Five, the threat actually caused Fernando Rosales to be in sustained fear for his own safety or for the safety of his immediate family." The instruction defined "sustained fear" as "fear for a period of time that is more than momentary, fleeting or transitory."

During rebuttal closing argument, the prosecutor explained why there were two separate counts, both identifying Rosales as the victim of defendant's criminal threats: "In count[] 4, if you remember, the defendant went up to Fernando Rosales when he and his wife were trying to take groceries out and made a death threat, and that death threat was also specific to Mr. Rosales' children. He threatened to kill those little kids, which is why he's guilty of two separate counts of criminal threats that night. [¶] Because that first threat he made to Fernando Rosales not only dealt with Fernando, but specifically dealt with his kids. [¶] I asked Mr. Rosales at that exact moment were you

4

personally in fear for your own safety?  Not so much at that point.  What about your kids?  Absolutely.  He just threatened to kill my kids.  I was in fear for my children's life at that point.  That's count 4.  [¶]  Count 5 we look at a separate and distinct — Okay.  Now we've moved away from the car.  Fernando Rosales has retreated to his own property.  He's standing on his porch and the defendant comes back up to him and now he says again, further articulates 'I'm going to kill you.  I'm going to kill you, mother f'er.'  And Fernando Rosales at that point specifically told you I was also in fear for my own life at that point, not just my children's life anymore as protector and provider, but now also myself, which means you are now guilty of a separate count, count 5."

In sum, the operative information, the jury instructions, and the closing argument all indicated the prosecutor's sole theory was that Fernando Rosales was the victim of both counts 4 and 5.  Separate counts were alleged because two different threatening statements (both coming during the course of the 15-minute confrontation) caused Rosales to suffer different types of fear.

DISCUSSION

Defendant contends he should have been convicted and punished for one count of criminal threats with regard to his conduct toward Rosales, not two.  Our review is de novo because it depends on the interpretation of section 422 and on resolving mixed questions of law and fact.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1211; *People v. Williams* (2013) 218 Cal.App.4th 1038, 1048.)

"*Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person*, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of

purpose and an immediate prospect of execution of the threat, *and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety*, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."[3] (§ 422, subd. (a), italics added.)

Defendant does not contend his behavior fell short of a criminal threat; he concedes he was properly convicted of one count. Defendant also concedes he could have been convicted of multiple counts had the prosecutor pleaded and proved counts 4 and 5 by naming a different victim for each count (e.g., perhaps Rosales on count 4 and his wife or mother on count 5). (See *People v. Solis* (2001) 90 Cal.App.4th 1002, 1023-1025 [defendant properly punished on both counts of criminal threats because two victims were threatened].) But the prosecutor did not ask the jury to convict defendant twice based on his victimization of two individuals. The pleadings, the jury instructions, and the prosecutor's closing argument all characterized counts 4 and 5 as applicable only to Rosales as the victim of defendant's criminal threats.

To answer the question presented, we must determine "[t]he proper unit of prosecution" for section 422 (*People v. Whitmer* (2014) 59 Cal.4th 733, 744 (conc. opn. of Liu, J.)), i.e.: Is every threatening communication a crime or do all threatening statements uttered in a single transaction amount to a single crime? "Answering a unit of prosecution question requires courts to determine when 'the actus reus prohibited by the statute — the gravamen of the offense — has been committed more than once." (*Ibid.*, quoting *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349.) We also must decide whether the Legislature intended to create two different crimes within section 422, by

---

[3] "For purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household." (§ 422, subd. (b).)

identifying both the recipient of a threatening communication and his or her immediate family as qualifying objects of the threatening language. (See *People v. Gonzalez* (2014) 60 Cal.4th 533, 537 ["the determination whether subdivisions [of a single statute] define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions"].)[4]

These doctrinal generalities are better understood by way of three specific inquiries and hypothetical fact patterns. First, can multiple threatening utterances directed at a single victim, occurring over the course of a single confrontation, amount to multiple violations of section 422? For example, if Perpetrator makes 12 distinct references to imminent violence against Victim during a single 15-minute long tirade, can Perpetrator be fairly charged with and convicted of a dozen counts of criminal threats? Second, can a single communication to a single victim that encompasses the threat of violence to multiple individuals constitute multiple violations of section 422? For instance, if Perpetrator screams (once) at Victim that he is going to kill the Victim, Victim's wife, and Victim's two children, can Perpetrator be charged with and convicted of two (or four) counts of criminal threats? Third, combining these questions to cover the facts of this case, can multiple statements that would each qualify as a criminal threat towards the victim, referencing both the victim and his immediate family, delivered over the course of an uninterrupted 15-minute encounter and varying in their effect upon the

---

[4] The parties focus much of their briefing on sections 954 and 654. "Section 954 generally permits multiple conviction[s for the same act or course of conduct]. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.'" (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) But "section 654 does not bar multiple punishment[s] for multiple violations of the same criminal statute." (*People v. Correa* (2012) 54 Cal.4th 331, 334.) And the usual inquiry for courts applying section 954 is whether one count is a lesser included offense of another, in which case the court should strike the lesser. (See, e.g., *People v. Benavides* (2005) 35 Cal.4th 69, 97.) Obviously, the instant case turns on different questions, as it involves two counts charged under the same Penal Code provision.

7

victim (i.e., sometimes he is afraid for his family, sometimes for himself), constitute multiple violations of section 422?

To resolve these types of questions, courts must look to the particular characteristics of the crime at issue, including both (1) the factual circumstances of the defendant's criminal conduct and (2) the elements of the crime as defined by the Legislature in the relevant statute. Sometimes, multiple convictions are appropriate for similar acts during a single course of conduct.[5] Even a single act can result in two convictions under the same statute if the Legislature intends such a result.[6] On the other hand, some statutes were written by the Legislature to authorize only a single conviction for a wrongful course of conduct,[7] or an act victimizing more than one person or violating

---

[5] Multiple violations under section 289 may occur during a single sexual assault because section 289 prohibits "'penetration, however slight,'" with a foreign object; "[i]t follows logically that a *new and separate* violation of section 289 is 'completed' each time a *new and separate* 'penetration, however slight' occurs." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [affirming three separate convictions because defendant's "finger actually penetrated the victim's vagina against her will three *separate* times" during the same attack].) Two separate unauthorized entries into a building for purposes of committing felonies may result in two burglary convictions. "Under section 459, burglary consists of an unlawful entry with the intent to commit a felony. Thus, the crime is *complete*, i.e., one may be prosecuted and held liable for burglary, upon entry with the requisite intent. [Citation.] It follows, therefore, that every entry with the requisite intent supports a separate conviction." (*People v. Washington* (1996) 50 Cal.App.4th 568, 578-579.) "[S]uccessive acts of violence against" a victim can result in multiple convictions for inflicting corporal injury on a cohabitant under section 273.5. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477.)

[6] A defendant may properly suffer two convictions under section 288a for a single act because oral copulation with an unconscious person (§ 288a, subd. (f)) and oral copulation with an intoxicated person (§ 288a, subd. (i)) were intended to be separate crimes. (*People v. Gonzalez*, *supra*, 60 Cal.4th at p. 535.)

[7] Section 270 allows only a single conviction for failing to provide child support, even if the lack of payment occurred over several consecutive months. (*People v. Gregori* (1983) 144 Cal.App.3d 353, 357, 360-361.) Collecting a series of welfare checks based on a single misrepresentation amounts to a single grand theft conviction.

8

the statute in more than one way.[8]

We conclude section 422 prohibits multiple convictions based on multiple threats toward a single victim during a single encounter. The appropriate unit of prosecution is indicated by section 422's requirement that the victim "be *in sustained fear* for his or her own safety or for his or her immediate family's safety . . . ." (§ 422, subd. (a), italics added; see *People v. Chandler* (2014) 60 Cal.4th 508, 511.) Sustained fear occurs over "a period of time 'that extends beyond what is momentary, fleeting, or transitory.'" (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "Fifteen minutes of fear . . . is more than sufficient to constitute 'sustained' fear for purposes of . . . section 422." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; see *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348-1349.) A violation of section 422 is not complete upon the issuance of a threat; it depends on the recipient of the threat suffering "sustained fear" as a result of the communication. It is not appropriate to convict a defendant of multiple counts under section 422 based on multiple threatening communications uttered to a single victim during a brief, uninterrupted encounter.

---

(*People v. Bailey* (1961) 55 Cal.2d 514, 518-520; see *People v. Whitmer*, *supra*, 59 Cal.4th at p. 745 (conc. opn. of Liu, J.) ["*Bailey* was answering a unit of prosecution question, i.e., whether the acts in question constituted one offense *or* several offenses"].)

[8] Receipt of three different stolen goods in a single transaction should result in one section 496 conviction, not three, regardless of the provenance of the individual goods (i.e., the three goods were stolen from three different victims). (*People v. Smith* (1945) 26 Cal.2d 854, 858-859.) Under a prior version of section 261, a defendant could not be convicted of both forcible and statutory rape for the same wrongful penetration. (*People v. Craig* (1941) 17 Cal.2d 453, 454-457, 459; see *People v. Gonzalez*, *supra*, 60 Cal.4th at p. 539 ["*Craig* did not hold that a single Penal Code section could never comprise multiple offenses; it simply concluded, based on the wording and structure of the statute, that former section 261 set forth only one offense that could be committed under several different circumstances"].)

We also reject the notion that a single threat referencing violence against both a victim and his or her immediate family members, heard only by the victim, can constitute multiple offenses under section 422. The statute provides two alternative means by which the victim's fear could manifest itself — fear for oneself or fear for one's immediate family members. But there are not separate statutory subdivisions distinguishing between victims who fear for their own safety and victims who fear for others' safety. Nor are there any other indications that the Legislature intended to create two separate crimes within section 422, subdivision (a), as opposed to identifying different circumstances in which the single crime defined by the statute can be committed.

These two interpretive conclusions intersect in this case. Neither defendant's utterance of more than one threat nor the shift in focus of Rosales's fear over the course of the ordeal justifies two section 422 convictions. From the moment defendant approached Rosales near his car and threatened to kill Rosales's family, the jury's guilty verdicts necessarily suggest Rosales was in sustained fear throughout the entirety of the confrontation. It does not matter whether Rosales's primary fear was for himself or members of his family at various times. Irrespective of the number of threatening statements and family members threatened, defendant was properly convicted of only one count under section 422 for his conduct toward Rosales.

In sum, section 422 authorizes only one conviction and one punishment per victim, per threatening encounter during which the victim suffers a single period of sustained fear, regardless of how many individuals are included within the scope of the threats or how many times the perpetrator repeats the threats. We reverse defendant's conviction on count 5.

10

DISPOSITION


The judgment on count 5 is reversed, and we modify the judgment by striking the conviction on that count.  In all other respects, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.



IKOLA, J.

WE CONCUR:


FYBEL, ACTING P. J.


THOMPSON, J.


11