Filed 8/12/16  P. v. Jones CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062895 |
| v. | (Super.Ct.No. SWF1207301) |
| LAWRENCE THEORDIS JONES II, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Richard Todd Fields, Judge.  Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

1

The jury convicted defendant Lawrence Theordis Jones II of possession of a concealed dirk or dagger (Pen. Code, § 21310)[1] and three counts of criminal threat (§ 422, subd. (a)). Defendant also admitted that he had a prior serious felony conviction (§ 667, subd. (a)), which was also a prior strike conviction (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)), and had served a prior prison term (§ 667.5, subd. (b)). Defendant was sentenced to 11 years 4 months in state prison.

Defendant contends that there was insufficient evidence that he directed his threats at more than one victim. We conclude that substantial evidence supported all three of defendant's convictions for criminal threat and that a threat spoken to a single victim but threatening multiple victims heard by those victims is grounds for separate convictions for each victim. The judgment is affirmed.

I

STATEMENT OF FACTS

Austin Blackcloud lived with his fiancée Sarah Erickson and four of their children in an upstairs apartment in San Jacinto. In the early morning hours of November 21, 2012, he was playing video games with friend Steven Morris, when they heard someone opening the door to Blackcloud's truck. Blackcloud and Morris discovered the father of the downstairs neighbor Angie pulling out the truck's stereo. Blackcloud pulled him out of the truck and pushed him to the ground. Angie's father told Blackcloud he was going

_____

[1] All further statutory references are to the Penal Code.

2

to kill him.  Morris stood over the father while Erickson called the police.  Police officers arrived and arrested the father.

Later that day, defendant confronted Blackcloud in the complex parking lot and accused Blackcloud of parking in defendant's "girlfriend's" parking space.[2]  Blackcloud told defendant that he only parked in his own assigned space and walked away.

That night, Erickson, Morris, and Blackcloud were on the apartment balcony using a barbecue.  Angie had a party going at the same time and a group of people including defendant had gathered downstairs.  Defendant looked up at the three of them and yelled, "You think you can beat up on an old man?  Why don't you try and beat up on a young—N word."  Defendant added, "You can knock an old—N-word—out, but you can't knock this young—N-word—out."

Defendant then said, "I've got something for his ass."  Defendant disappeared under the balcony and apparently showed something to the rest of the people at the party.  The people downstairs responded, "Oh, you're going to get him."  Defendant said that he was part of the "Third Gang Crips" and that he was going to "[r]un up in the house and show us real gang-banging" with his "homies."  Defendant said, "You're going to see what a real gangster is.  I don't care if there's women, children.  I don't care.  I'll shoot up the whole place."

---

[2]  It is unclear from the record what the relationship was between Angie and defendant, if she was the girlfriend referenced by defendant or if a different neighbor was and defendant was merely friends with Angie.

Erickson testified that all three were outside when defendant began shouting up at the balcony.  Morris testified that he was inside when the shouting first started, and was otherwise "in and out" for the duration of the shouting, but was outside to hear the threats.  Blackcloud also testified that all three of them were outside standing next to each other for the relevant time period to hear the threats.

Although Morris testified that defendant was challenging Blackcloud to a fight and not him or Erickson, Morris also testified that after his initial shouts, defendant's threats "started to be more pointed up towards us."  He testified that he was "getting nervous" and that Erickson was "frantic."

Although Erickson testified that defendant initially directed his speech to Austin, she also testified that defendant said that "they were going to kill us all."  She testified that she was scared, especially for her children.

Erickson called the police; Morris and Blackcloud shut the doors and windows and locked them.  When the police officers arrived they searched defendant and found a comb which concealed a sharp knife.  Although defendant denied threatening anyone to the arresting officer, he told him that he was falsely accused because Angie's father got "knocked out."

## II

## DISCUSSION

*Sufficiency of the Evidence for Three Counts of Criminal Threat*

Defendant contends that there was insufficient evidence that defendant intended to threaten Erickson and Morris to support convictions for criminal threat against the two of them in addition to Blackcloud because defendant lacked the specific intent to direct his threats at them.  We disagree.

When considering a challenge to the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains reasonable, solid, credible evidence from which a reasonable jury could find a defendant guilty beyond a reasonable doubt.  (*People v. Johnson* (2015) 60 Cal.4th 966, 988.)  We employ this same standard in evaluating both direct and circumstantial evidence.  (*Ibid.*; *People v. Towler* (1982) 31 Cal.3d 105, 118-119.)  We do not invade the province of the jury by reweighing the evidence, or by re-reconciling competing circumstances and redrawing competing inferences from those circumstances; it is the jury—not the appellate court—which must be convinced of a defendant's guilt beyond a reasonable doubt.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055-1056; *People v. Nelson* (2011) 51 Cal.4th 198, 210.)  Even the testimony of a single witness may provide the jury with sufficient evidence to support a conviction.  (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

Criminal threat requires the prosecutor to prove, inter alia, that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat"; and that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422; see *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 [elements (2) and (4) of the California Supreme Court's five-element breakdown of the statute].)

When a defendant threatens violence against multiple people, but only one victim hears the threat, the defendant cannot be convicted of multiple counts. (*People v. Wilson* (2015) 234 Cal.App.4th 193, 201.) However, where a threat is spoken to a single victim, but the threat is against additional victims who hear the threat, the defendant may be convicted of separate counts for each victim. (*People v. Lipsett* (2014) 223 Cal.App.4th 1060, 1062-1063, 1065; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1008-1009, 1023-1025.)

In *Lipsett*, the defendant told a third party to shoot the victim in front of the victim. (*People v. Lipsett*, *supra*, 223 Cal.App.4th at pp. 1062-1063, 1065.) There, the court held that the statement was "directed" at the victim because it was intended to scare the victim. (*Id.* at p. 1065.) In *Solis*, the defendant left threatening messages on his girlfriend's answering machine which she shared with her roommate. (*People v. Solis*, *supra*, 90 Cal.App.4th at pp. 1008-1009.) The defendant threatened to kill his girlfriend and "everybody" and added that her " 'whole place is going to burn to hell.' " (*Id.* at p. 1009.) Both women listened to the messages and became frightened. (*Ibid.*) The

6

court held that the defendant could be sentenced consecutively under section 654 for two counts of criminal threats because there were two victims. (*Id.* at pp. 1023-1025.) Even though the defendant did not know if both women would ultimately hear the threats and even though the defendant was only directly speaking to his girlfriend and not the roommate, the court still described the threats as "directed at separate listeners." (*Id.* at p. 1024.)

Thus, as applied to this case, upon consideration of the entire record, all three of defendant's criminal threat convictions should be affirmed if substantial evidence supports one of two fact scenarios: (1) defendant directly threatened all three victims; or (2) defendant threatened Erickson and Morris while speaking to Blackcloud, and Erickson and Morris heard the threats and were in fear for their or their immediate family's safety. In the later scenario the fact that defendant was only speaking directly to Blackcloud does not render evidence of his threats against Erickson and Morris insufficient to support a criminal threat conviction as to each victim.

Under the first fact scenario, looking up at the balcony where all three victims stood defendant threatened that he was going to go up to the apartment and "kill [them] all," and to "shoot up the whole place" and "everybody in the apartment" including women and children. While Erickson and Morris both seem to imply that defendant initially began the altercation by yelling at Blackcloud, or at least not at either of them, they also both testified that he did directly threaten them as well. Erickson testified that defendant said "they were going to kill us all," including herself in the threat. She

testified further that she was scared. Morris testified that defendant's threats "started to be more pointed up towards us." He testified further that he was "getting nervous" and that Erickson was "frantic."

While it is unclear what defendant's relationship was with Angie or her father, the jury could reasonably have inferred that defendant was upset about the father's arrest. Defendant revealed that he was upset at what happened to the father both in his own language, daring the people on the balcony to "knock an old—N-word—out but you can't knock this young—N-word—out." Defendant additionally revealed that in his mind the confrontation with the people on the balcony was linked to the earlier incident with the father when he told the arresting officer that he had been falsely accused of criminal threats because the father "got knocked out by the upstairs neighbor." Thus, the jury could reasonably have found that defendant intended to threaten all three of the victims on the balcony, because all three had a role in the incident with the father. Blackcloud was the one who pushed the father to the ground; Morris had a direct hand in his arrest; and Erickson was both Blackcloud's girlfriend and the one who called the police on the father.

Consequently, despite defendant's contention that "the record only supports an inference that [he] directed his statements to Blackcloud and that Blackcloud was the only intended recipient of the threats," a reasonable trier of fact could have found beyond a reasonable doubt from the testimony of Erickson and Morris that defendant directly threatened all three of the victims on the balcony.

8

Under the second fact scenario, even if defendant had only been directly speaking to Blackcloud when defendant said he would "kill [them] all," substantial evidence supported the inference that he intended for all three victims to take the statements as threats. (See *People v. Toledo*, *supra*, 26 Cal.4th at p. 228 [element (2), above].) In accordance with *Lipsett*, for the same reason that the jury could reasonably have found that defendant intended to directly threaten the three victims, it could reasonably have found that even if he did not directly speak to all three victims, he did intend to scare them all with his statements to Blackcloud. (*People v. Lipsett*, *supra*, 223 Cal.App.4th at p. 1065 [where the defendant also stood in front of the victim when he told a third party to shoot him, statement was considered "directed" at the victim because it was intended to scare him].) And, in accordance with *Solis*, because defendant threatened anybody who was with Blackcloud in his apartment, the threats were "directed at [each of the three] separate listeners." (*People v. Solis*, *supra*, 90 Cal.App.4th at p. 1024.)

Accordingly, in keeping with *Lipsett* and *Solis*, we hold where, as here, substantial evidence shows that a defendant threatened multiple victims in front of them, he may be convicted separately for each victim even if he only spoke to one of the victims. Thus, substantial evidence supported the jury's finding that defendant committed the offense of criminal threats against all three victims whether he spoke directly to them or only to Blackcloud in their presence.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

SLOUGH

J.

10