Filed 8/3/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID CUAUHTEMOC AYALA,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | A161936<br><br>(San Mateo County<br>Super. Ct. No. 20-NF-010833)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on July 30, 2021, be modified as follows: On page 4, the last sentence of the factual and procedural background, beginning "This court complied with," is deleted and replaced with: "This court complied with the high court's order on April 23, 2021, by issuing the requisite order to show cause, and has now received the People's return and Ayala's traverse to said order."

There is no change in the judgment.

_____

* Jackson, J.; Fujisaki, Acting P. J.; Petrou, J.

1

Dated:    <u>August 3, 2021</u>         <u>FUJISAKI, J.</u>   Acting P. J.

<u>A161936/Ayala v. Superior Court</u>

Trial Court:        Superior Court of San Mateo County

Trial Judge:        Susan Greenberg, J.

Counsel:        Paul F. DeMeester for Petitioner.

                No appearance for Respondent.

                Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Donna M. Provenzano and Amit Kurlekar, Deputy Attorneys General, for Real Party in Interest.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>

DAVID CUAUHTEMOC AYALA,

    Petitioner,

v.

THE SUPERIOR COURT OF SAN MATEO COUNTY,

    Respondent;

THE PEOPLE,

    Real Party in Interest.

</td><td>

A161936

(San Mateo County
Super. Ct. No. 20-NF-010833)

</td></tr>
</table>

Before this court is a petition for peremptory writ of prohibition (petition) filed by petitioner David Cuauhtemoc Ayala in a criminal case. Ayala was charged in September 2020 with two counts of committing criminal threats against Abner Z. (count 1) and Clarisa Z. (count 2) in violation of Penal Code section 422.[1] Ayala seeks issuance of a peremptory writ of prohibition restraining the trial court from taking any further steps or proceedings with respect to count 2. He reasons that Clarisa was improperly named in the information as the victim or complaining witness of the threat charged in count 2 because Clarisa was not the target of any alleged threat.

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

Rather, Abner, who is Clarisa's husband, was allegedly the target of Ayala's threat. We deny Ayala's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2020, a felony complaint was filed charging Ayala with committing criminal threats in violation of section 422 against Abner (count 1) and Clarisa (count 2).

On October 7, 2020, a preliminary hearing was held at which testimony was received from one witness, San Mateo County Deputy Sheriff Carlos Tapia. According to Deputy Tapia, he was dispatched to a Millbrae apartment about 2:00 a.m. on September 21, 2020, based on a report of an altercation between a mother and a son. Upon his arrival, Deputy Tapia heard yelling from within the apartment. Clarisa, visibly crying and upset, opened the door and said, " 'Please help me. My son is going crazy.' " Deputy Tapia entered the apartment and observed Ayala walking toward him in the hallway. Ayala yelled, " 'Come get this bitch ass nigga before I fuck him up,' " referring to Abner, his stepfather, who was standing near one of the bedrooms. Shortly thereafter, Ayala threw ice-cream at Abner, prompting Deputy Tapia to detain Ayala and escort him to the patrol car.

Deputy Tapia then interviewed Clarisa, who told him in a shaky voice that she did not want her son in her apartment anymore. Earlier, Ayala went to the apartment because he had car trouble. However, after arriving, an argument arose over the safety of Ayala's four-year-old daughter, who, according to Ayala, had been improperly touched by Abner. Ayala told Clarisa, " 'I'm going to kill this motherfucker if he did something to my daughter,' " referring to Abner, who was in a bedroom at the time. Ayala's threat prompted Clarisa to call 911.

2

Abner also talked to Deputy Tapia, although "he was crying uncontrollably" and had a shaky voice that made it difficult for Tapia to understand him. Abner told the deputy that he was in the bedroom when the argument arose between Ayala and Clarisa. Abner called 911, only to be told by the operator that Clarisa was already on the phone. Ayala then went into the bedroom, confronted Abner, and accused him of molesting his daughter. Ayala warned Abner that if anything had happened to his daughter, someone would pay. Ayala then tried to punch Abner, but Abner blocked the punch and moved Ayala away. Ayala tried to turn on the light in the darkened bedroom and attempted to take Abner's cell phone from him. Leaving the bedroom for the kitchen, Ayala told Abner, " 'I'm going to get a knife to kill you.' "

After arresting Ayala and reading him his *Miranda* rights, Deputy Tapia interviewed Ayala. Ayala reported that his parents were acting strange and that he was concerned Abner had inappropriately touched his daughter. Concerned for his daughter's safety, Ayala confronted Abner about his alleged inappropriate acts. Ayala acknowledged having said " 'some violent shit,' " and when Tapia asked Ayala if he threatened to kill Abner, Ayala responded, " 'If he did something to my kid, I would.' " Deputy Tapia believed that Ayala may have been under the influence of drugs during their interview.

Following the preliminary hearing, the magistrate held Ayala to answer to count 1 (Abner) but not to count 2 (Clarisa), finding a "failure of proof of a threat that would result in death and great bodily injury to Clarisa [Z.]."

Nonetheless, on October 20, 2020, the prosecutor filed an information that included two counts of making criminal threats in violation of section

3

422, the first count as to Abner and the second as to Clarisa.  This information also alleged that Ayala had two prior strike convictions and two prior felony convictions.

On December 22, 2020, Ayala moved to dismiss count 2 pursuant to section 995 on the primary ground that Clarisa was not threatened within the meaning of section 422 because the alleged threat was to kill or inflict physical harm on Abner.  On January 21, 2021, following a contested hearing, the trial court denied Ayala's motion, finding sufficient evidence as to each element of section 422 to support the offense charged in count 2.

On February 5, 2021, Ayala filed his petition for writ of prohibition, reasserting his section 995 argument.  This court summarily denied the petition on February 25, 2021.

On March 8, 2021, Ayala petitioned the California Supreme Court for review.  On April 21, 2021, the California Supreme Court granted Ayala's petition for review, vacated the dismissal of Ayala's petition for writ of prohibition, and transferred this matter back to us with directions to issue an order to show cause why the relief sought in the petition should not be granted.  This court complied with the high court's order on April 23, 2021, by issuing the requisite order to show cause, and has now received Ayala's return and the People's traverse to said order.

## DISCUSSION

The sole issue on review is whether section 422 encompasses Ayala's alleged threat to Clarisa to inflict death or serious bodily harm upon Abner. The principles guiding our de novo review of this statutory interpretation issue are well established.  We begin with the relevant statute.

4

## I.    Section 422.

Section 422 makes it a crime for "[a]ny person [to] willfully threaten[]
to commit a crime which will result in death or great bodily injury to another
person, with the specific intent that the statement, made verbally, in writing,
or by means of an electronic communication device, is to be taken as a threat,
even if there is no intent of actually carrying it out, which, on its face and
under the circumstances in which it is made, is so unequivocal,
unconditional, immediate, and specific as to convey to the person threatened,
a gravity of purpose and an immediate prospect of execution of the threat,
and thereby causes that person reasonably to be in sustained fear for his or
her own safety or for his or her immediate family's safety . . . ."
(§ 422, subd. (a).)

The California Supreme Court has divided the crime of criminal threats
into five constituent elements. "In order to prove a violation of section 422,
the prosecution must establish all of the following: (1) that the defendant
'willfully threaten[ed] to commit a crime which will result in death or great
bodily injury to another person,' (2) that the defendant made the threat 'with
the specific intent that the statement . . . is to be taken as a threat, even if
there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its
face and under the circumstances in which it [was] made, . . . so unequivocal,
unconditional, immediate, and specific as to convey to the person threatened,
a gravity of purpose and an immediate prospect of execution of the threat,'
(4) that the threat actually caused the person threatened 'to be in sustained
fear for his or her own safety or for his or her immediate family's safety,' and
(5) that the threatened person's fear was 'reasonabl[e]' under the
circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

## II. Statutory Construction.

When called upon to construe a statute such as section 422, "[o]ur primary task . . . is to identify and effectuate the underlying purpose of the law we are construing." (*People v. Garcia* (2017) 2 Cal.5th 792, 805.) " '[W]e begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' [Citation.] We consider first the words of the statute because ' " 'the statutory language is generally the most reliable indicator of legislative intent.' " ' [Citation.] '[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage.' [Citation.] However, section 7 cautions that 'words and phrases must be construed according to the context . . . .' (§ 7, subd. 16.) Accordingly, we have held that words in a statute ' " 'should be construed in their statutory context' " ' [citation], and that 'we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results' [citation], or 'would result in absurd consequences that the Legislature could not have intended.' [Citation.]" (*People v. Leiva* (2013) 56 Cal.4th 498, 506, 1st bracketed insertion added.)

" 'If, [on the other hand], the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.)

## III. Analysis.

Applying these legal principles, we conclude that section 422, reasonably read, permits Ayala to be charged with separate counts for making criminal threats directed at Abner, the intended target (count 1), and

6

those threats directed at Clarisa, the wife of the intended target (count 2).[2] The plain language of section 422, set forth *ante*, criminalizes willfully making a threat meeting the specified conditions and with the specified intent, and thereby causing the person threatened reasonably to be in sustained fear for either his or her own safety or the safety of his or her immediate family member. In other words, "[section 422] . . . require[s] a victim: the listener. In addition, it requires the listener suffer injury: sustained fear." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1025.) However, the listener's sustained fear may be for either his or her own safety or that of his or her immediate family member.

CALCRIM No. 1300, the instruction on section 422, reflects this interpretation. This instruction[3] requires the People to prove, among other

---

[2] The People concede a drafting error in the information as to count 2 in that it alleges that Ayala "did willfully and unlawfully threaten to commit a crime which would result in death and great bodily injury to Clarisa [Z.] . . . ." As Ayala points out, the testimony adduced at the preliminary hearing established that Ayala threatened Clarisa that he would kill her husband, Abner. We agree with the People that this error does not warrant writ relief, as it can be corrected by the trial court. (See *People v. Goolsby* (2015) 62 Cal.4th 360, 367 ["An information may be amended 'for any defect or insufficiency, at any stage of the proceedings,' so long as the amended information does not 'charge an offense not shown by the evidence taken at the preliminary examination.' (§ 1009.)"].)

[3] CALCRIM No. 1300 states: "To prove that the defendant is guilty of [making a criminal threat], the People must prove that:

"1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to ___ *<insert name of complaining witness or member[s] of complaining witness's immediate family>*;

"2. The defendant made the threat (orally/in writing/by electronic communication device);

"3. The defendant intended that (his/her) statement be understood as a threat [and intended that it be communicated to ___ *<insert name of complaining witness>*];

7

things, that "[t]he defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to ___ *<insert name of complaining witness or member[s] of complaining witness's immediate family>*"; that "[t]he defendant intended that (his/her) statement be understood as a threat [and intended that it be communicated to ___ *<insert name of complaining witness>*]"; that "[t]he threat was so clear, immediate, unconditional, and specific that it communicated to ___ *<insert name of complaining witness>* a serious intention and the immediate prospect that the threat would be carried out"; and that "[t]he threat actually caused ___ *<insert name of complaining witness>* to be in sustained fear for (his/her) own safety [or for the safety of (his/her) immediate family]."  (CALCRIM No. 1300, *supra*, p. 1007, 1st, 3d, 5th & 6th bracketed insertions added.)  As this language makes clear, the threat must be communicated to the complaining witness and cause the complaining witness to be in a state of sustained fear.  However, this threat, directed toward the complaining witness, must be to unlawfully kill or cause great bodily injury to *either* the complaining witness *or* his or her immediate family member.  The bench notes to CALCRIM No. 1300 further clarify:  "If there is evidence that the threatened person feared for the safety of members of his or her immediate family, the bracketed phrase in element 5 and the final bracketed paragraph defining 'immediate family'

---

"4. The threat was so clear, immediate, unconditional, and specific that it communicated to ___ *<insert name of complaining witness>* a serious intention and the immediate prospect that the threat would be carried out;
"5. The threat actually caused ___ *<insert name of complaining witness>* to be in sustained fear for (his/her) own safety [or for the safety of (his/her) immediate family];
"[AND]
"6. ___'s *<insert name of complaining witness>* fear was reasonable under the circumstances."  (CALCRIM No. 1300 (2021 ed.) p. 1007.)

8

should be given on request. (See Pen. Code, § 422; Fam. Code, § 6205; Prob. Code, §§ 6401, 6402.)" (Bench Notes to CALCRIM No. 1300, *supra*, p. 1008.)

Here, Deputy Tapia's testimony at the preliminary hearing reflects that Ayala made certain threats to Abner, the listener, that caused him sustained fear for his own life. For example, relevant to count 1, Abner reported that, after trying to punch him and take his cell phone, Ayala told Abner, " 'I'm going to get a knife to kill you.' " Relevant to count 2, Ayala made other threats to Clarisa, the listener, that caused her sustained fear for the life of Abner, her husband. Specifically, Clarisa reported to Deputy Tapia that Ayala told her, " 'I'm going to kill this motherfucker if he did something to my daughter,' " referring to Abner, who was in a bedroom at the time. If these and other facts[4] are proved at trial, the jury may properly find that by committing these separate acts toward these two individuals, Ayala twice violated section 422.

Moreover, we conclude that interpreting section 422 to encompass the threats Ayala made to both Clarisa and Abner best supports the underlying legislative intent. "In enacting section 422 as part of the California Street Terrorism and Enforcement Prevention Act, the Legislature declared that *every person* has the right to be protected from fear and intimidation. This act was in response to the growing number and severity of threats against peaceful citizens." (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221, italics added; see Stats. 1988, ch. 1256, § 1, p. 4179.) Thus, section 422 is not necessarily directed at a violator's intended infliction of death or physical harm on another person. Indeed, the statute, on its face, does *not* require

---

[4] We make no prediction as to whether the People will be able to prove each of the five constituent elements of the section 422 offenses charges in counts 1 and 2. (*People v. Toledo, supra*, 26 Cal.4th at pp. 227–228.)

9

that the violator intend to cause death or great bodily injury to the victim. Instead, section 422 is focused on an altogether different type of harm— mental distress. " '*While the statute does not require that the violator intend to cause death or serious bodily injury to the victim, not all serious injuries are suffered to the body. The knowing infliction of mental terror is equally deserving of moral condemnation*.' [Citation.]" (*People v. Solis, supra*, 90 Cal.App.4th at p.1024, italics added by *Solis*.)

Ayala argues, "The wording of section 422 requires that only a threat target [here, Abner] is a proper complaining witness." But Ayala's reading of the statute requires that we disregard the clause requiring the violator to cause the person threatened—which in count 2 is Clarisa—"reasonably to be in sustained fear for his or her own safety *or for his or her immediate family's safety*." (§ 422, subd. (a), italics added.) The rules of statutory construction disfavor this result. (See *People v. Leiva, supra*, 56 Cal.4th at p. 506 [" '[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage' "]; see also *People v. Wilson* (2015) 234 Cal.App.4th 193, 201 (*Wilson*) ["[§ 422] provides two alternative means by which the victim's fear could manifest itself—fear for oneself or fear for one's immediate family members"].)

Ayala also relies on *Wilson, supra*, 234 Cal.App.4th 193, to argue that count 2 fails under the so-called "one conviction per victim" test. Ayala misreads this authority.

In *Wilson, supra*, the reviewing court considered "whether [the] defendant should have been convicted of and punished for two counts of making criminal threats (counts 4 & 5) "based on a single 15-minute incident during which defendant continuously menaced the victim [Fernando Rosales]

10

and (at least) twice threatened to kill the victim and his family." (234 Cal.App.4th at p. 196.) Neither the information nor the jury instruction distinguished between counts 4 and 5, which both identified Rosales as the victim. (*Id*. at pp. 196, 197.) The prosecutor argued at trial that the defendant made separate threats to kill Rosales and to kill Rosales's family and, as such, could be convicted of two counts under section 422. (*Id*. at pp. 197–198.) The reviewing court rejected this theory, "conclud[ing] section 422 prohibits multiple convictions based on multiple threats toward a single victim during a single encounter." (*Id*. at p. 201.) The *Wilson* court explained: "A violation of section 422 is not complete upon the issuance of a threat; it depends on the recipient of the threat suffering 'sustained fear' as a result of the communication. It is not appropriate to convict a defendant of multiple counts under section 422 based on multiple threatening communications uttered *to a single victim* during a brief, uninterrupted encounter." (*Wilson, supra*, 234 Cal.App.4th at p. 201, italics added.)

As the italicized language makes clear, *Wilson* is distinguishable because, unlike in that case, here, we have two victims—Clarisa and Abner— each of whom allegedly sustained fear as a result of Ayala's criminal threats.

" 'In the end, a court must adopt the construction most consistent with the apparent legislative intent and most likely to promote rather than defeat the legislative purpose and to avoid absurd consequences.' " (*People v. Leiva, supra*, 56 Cal.4th at p. 518.) Here, interpreting section 422 to encompass both a violator who threatens another with his or her own death or great bodily harm and a violator who threatens another with inflicting death or great bodily harm on a member of that person's immediate family best promotes the Legislature's identified goal of ensuring "every person [is]

11

protected from fear and intimidation." (*People v. Martinez, supra*, 53 Cal.App.4th at p. 1221.) We thus find writ relief inappropriate in this case.

## DISPOSITION

The petition for peremptory writ of prohibition is denied.

_____

Jackson, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Petrou, J.

A161936/*Ayala v. Superior Court*

13

<u>A161936/Ayala v. Superior Court</u>

Trial Court:        Superior Court of San Mateo County

Trial Judge:        Susan Greenberg, J.

Counsel:        Paul F. DeMeester for Petitioner.

        No appearance for Respondent.

        Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Donna M. Provenzano and Amit Kurlekar, Deputy Attorneys General, for Real Party in Interest.