Filed 11/18/25  P. v. Padhol CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B336248 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA114193-01) |
| v. | |
| SIARHEI PADHOL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Karen Joynt, Commissioner.  Reversed.

Ryan Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kim Aarons and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Siarhei Padhol appeals his conviction of violating Penal Code[1] section 422.  We reverse the judgment because there was no substantial evidence that the victim of the crime experienced sustained fear.

## FACTUAL AND PROCEDURAL BACKGROUND

Padhol was charged with making a criminal threat against Krikor Avdoiansimonian, a funeral counselor who works for a mortuary.  On March 18, 2023, Avdoiansimonian's work for the mortuary took him to a church where a funeral service was taking place.

While Avdoiansimonian waited outside the church for the funeral to conclude, he saw Padhol speaking loudly to and following a man who worked for the church, Hagop.  Avdoiansimonian had never seen Padhol before but he knew Hagop.  Hagop had limited comprehension ability and did not speak English.

Avdoiansimonian tried to find out from Padhol what had happened, but Padhol responded only, "He knows.  He knows.  He knows what he did."  Avdoiansimonian decided to look for Azat Voskanyan, who was in charge of church security.  He was unable to locate Voskanyan upstairs in the church, but when he went down to the church hallway, Avdoiansimonian saw Voskanyan and another man there with Padhol and Hagop.  Padhol was yelling at Hagop in Russian.  Voskanyan, who spoke Russian, told Padhol Hagop could not understand him.

The men were concerned that Padhol's yelling would disrupt the funeral services, so they left the building.  Outside,

---

[1]     Undesignated statutory references are to the Penal Code.

they continued to ask Padhol why he was yelling at and following Hagop and what had happened.

Padhol asked the men, in English, "You have family?" Padhol then showed Avdoiansimonian his phone, which displayed a photograph of a gun and a bullet. He told Avdoiansimonian, "I will bring this."

Padhol left immediately after showing Avdoiansimonian the photograph. Avdoiansimonian testified, "[E]verything went fast when he showed [the photograph]. He left. We left."

Avdoiansimonian did not call 911. He and Voskanyan went to the church administration to report what had happened. Avdoiansimonian explained that he went to the church administration because "it's not my property; it's the church. So in my opinion, they have to know what happened. So we explain everything, and they decide what they decide."

Reporting the event to the administration took approximately five minutes, after which Avdoiansimonian returned to work. Avdoiansimonian remained at the church until the funeral finished, then left to provide transport from the church to the cemetery. He estimated that he remained at the church for "[m]aybe 20 minutes" after he resumed work.

Avdoiansimonian testified he felt "nothing" when Padhol asked him if he had a family. When Padhol showed him the photograph of a gun, Avdoiansimonian felt "a little bit" of fear. He was not terrified. He testified he felt fear upon seeing the photograph because he did not know why Padhol was showing it to them—was it to scare them or would he bring the gun? Avdoiansimonian understood Padhol to be threatening him, but when asked who he was afraid for, Avdoiansimonian answered, "[F]or the church, for the people that were there."

3

Avdoiansimonian was unable to state precisely when his fear stopped, but he testified that once he made his report to the administration, "I went to my job. If I was in fear, I would call 911 by myself."[2] While he was working at the church after making the report, he was not afraid that Padhol would return. During the approximately 25 minutes between the threat and Avdoiansimonian's departure from the church, he was not afraid Padhol would come back. He was not afraid of Padhol when he saw him 12 days later after the preliminary hearing, nor did he experience fear upon seeing Padhol in the courtroom at trial.

On redirect, the prosecutor again attempted to elicit testimony of sustained fear from Avdoiansimonian. After confirming that Avdoiansimonian had been at the church for approximately 25 minutes from when the threat was made until he left, the prosecutor asked, "With regard to fear, how did you feel within that 25 minutes?"

"Yeah, honestly, when this happened, I went to my job, and I didn't think about nothing, honestly," answered Avdoiansimonian. "I continue with my job, and that's it."

"Did you feel fear once you left the church?" the prosecutor inquired.

---

[2]     When Avdoiansimonian gave this testimony, the prosecutor asked, "Oh, so now you're saying that you didn't feel fear?" as though Avdoiansimonian's testimony that he was not feeling fear when he went back to work after reporting the incident was a denial of his previous testimony that he experienced fear when the threat was issued. Avdoiansimonian responded by reiterating his prior testimony: "No, I say I feel fear, but not terrified."

Avdoiansimonian said, "Kind of, maybe, but no."  He said he did not think about it further.

The prosecutor asked, "Did your fear decrease or increase after you left the church?"

"Decrease," answered Avdoiansimonian.  When asked why, he responded, "Because I think this has happened and finished.  I don't know."  The prosecutor asked Avdoiansimonian if he had believed Padhol would follow him when he left the church, and Avdoiansimonian answered, "Honestly, I didn't think about it, no."  At this, the prosecutor concluded the examination.

Padhol was convicted of making a criminal threat and placed on formal probation for two years with various conditions, including serving 180 days in county jail and undergoing a drug rehabilitation program.  He appeals.

## DISCUSSION

Padhol contends the evidence was insufficient to support his conviction for making a criminal threat against Avdoiansimonian.  Specifically, he argues that the evidence was insufficient to establish that Avdoiansimonian experienced sustained fear.  We agree.

"In considering a sufficiency of the evidence claim, we review 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Collins* (2025) 17 Cal.5th 293, 307 (*Collins*).)  "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive

province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*).) However, " '[t]he substantial evidence rule mandates consideration of the weight of the evidence before deferring to the conclusions drawn from the evidence by the trier of fact. "[I]n determining whether the record is sufficient . . . the appellate court can give credit only to 'substantial['] evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' " ' " (*Collins*, at p. 307.) "[R]easonableness [i]s the ultimate standard under the substantial evidence rule." (*People v. Kunkin* (1973) 9 Cal.3d 245, 250.)

To prove a defendant made a criminal threat, "the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228; § 422, subd. (a).)

The sole element Padhol claims was not supported by substantial evidence was the element of sustained fear, so we consider only that element here. "Sustained fear must occur over 'a period of time that extends beyond what is momentary, fleeting, or transitory.'" (*People v. Roles* (2020) 44 Cal.App.5th 935, 942.) Ordinarily, sustained fear lasts "beyond the moments of the encounter." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140 (*Ricky T.*).) Courts have held that 15 minutes satisfies the sustained fear requirement (*Roles*, at p. 942; see, e.g., *People v. Wilson* (2015) 234 Cal.App.4th 193, 201; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156), although, as will be discussed below, under circumstances not applicable here a shorter duration of fear, or fear confined to the length of the encounter, may be sufficient.

Here, Avdoiansimonian testified he experienced "a little bit" of fear but was not terrified when Padhol showed him the photograph of a gun and threatened to bring it, but Padhol departed directly after making that statement. During the 25 minutes that passed between the threat and his departure from the church to transport people to the cemetery, Avdoiansimonian did not experience fear, or even concern: when asked about his fear during this time period, he responded, "[W]hen this happened, I went to my job, and I didn't think about nothing, honestly." He denied being afraid Padhol would return while he was working at the church, and explained that if he had been in fear, he would have called 911 himself—but he did not do so.

This evidence was insufficient to demonstrate Avdoiansimonian experienced sustained fear. In fact, it established the opposite, that Avdoiansimonian's fear was

7

momentary, fleeting, and transitory: he was a little bit afraid when he was threatened, the interaction promptly ended, and once he reported it to the property owner,[3] he went back to his work without fear that Padhol would return to make good on his threat.  On this record, "[w]hatever emotion—fear, intimidation, or apprehension—[the victim] felt during the moment of the verbal encounter, there was nothing to indicate that the fear was more than fleeting or transitory."  (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140.)

The People, however, argue Avdoiansimonian's response, "Decrease," when asked if his fear decreased or increased once he left the church, was on its own "sufficient to establish that he had been in sustained fear."  The People reason that "[i]n order for Avdoiansimonian's fear to have decreased, he must have been experiencing fear prior to that point."  The problem with this argument, though, is that the prosecutor's question was counterfactual.  Despite Avdoiansimonian repeatedly testifying he did not experience ongoing fear, the prosecutor asked him an either-or question that assumed he did.  We cannot endorse the People's view that a one-word response to a question that took as its premise a state of mind that Avdoiansimonian had already denied is " 'evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

---

[3]     Avdoiansimonian's report to the administration was an appropriate response calling the church's attention to an incident that had occurred on their property so the church could decide how to handle the situation; it does not evince sustained fear. (See, e.g., *Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140 [teacher sending student to the school office after he threatened her was not indicative of sustained fear but was instead "an appropriate, necessary response to a disruptive classroom incident"].)

8

defendant guilty beyond a reasonable doubt.' " (*Collins, supra,* 17 Cal.5th at p. 307.) While we are mindful that it is not our role to resolve evidentiary conflicts (*Young, supra*, 34 Cal.4th at p. 1181), here we are not resolving a conflict in the evidence. We are " 'consider[ing] the weight of the evidence before deferring to the conclusions drawn from the evidence by the trier of fact,' " and upon doing so, we conclude that an inference based on the answer to a question that assumed facts not in evidence and offered the witness only two options, neither of which was consistent with what he had already testified repeatedly, is not " ' " 'substantial['] evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' " ' " (*Collins*, at p. 307.) On appellate review, we may only give credit to substantial evidence. (*Ibid.*)

As the People note, it has been held that a victim may experience sustained fear even though the fear exists only during the incident itself. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 634.) The People, however, neglect to acknowledge that *Brugman* involved a protracted incident during which the victim was repeatedly terrorized. In *Brugman*, "[t]he incident was a drawn-out ordeal, during which . . . Brugman put the gun to [victim C.'s] head and threatened to kill her over and over again. 'It's like he went in and out of . . . himself and, like, for a second, like, cried, and then the next second he was, like, no, no, no, like fighting with himself. And he was, like, "No, no, I'm going to kill you." And he'd put it back up to my head, and then he'd put it down.' " (*Ibid.*) Under such circumstances, the *Brugman* court held that a "reasonable juror could conclude that while enduring this extended scenario, C. did not merely experience fear that

was 'momentary, fleeting, or transitory' [citation], but instead experienced sustained fear." (*Ibid.*)

Similarly, if the circumstances are extreme enough—such as when a person believes they will be killed imminently—even one minute can be enough time for fear to be sustained. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) In *Fierro*, the defendant displayed a weapon and said he would kill the victim " 'right now.' " (*Ibid.*) Finding sufficient evidence of sustained fear, the court observed, "When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' " (*Ibid.*) Neither of those circumstances was present here, where Avdoiansimonian experienced "a little bit" of fear but not terror when the single threat was made, and the rapidly concluded encounter with Padhol was in no way an extended ordeal of prolonged terrorization.

As there was insufficient evidence of the element of sustained fear from which a rational trier of fact could find Padhol guilty beyond a reasonable doubt, Padhol's conviction for making a criminal threat must be reversed.[4]

---

[4] Our conclusion that the conviction must be reversed due to insufficient evidence makes it unnecessary to address Padhol's remaining arguments concerning prosecutorial misconduct.

**DISPOSITION**

The judgment of conviction is reversed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                STRATTON, P. J.

We concur:



        WILEY, J.



        VIRAMONTES, J.

11