Filed 9/27/21  P. v. Coe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C090068 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF185016) |
| v. | |
| ROBERT GLEN COE, | |
| Defendant and Appellant. | |

Defendant, Robert Glen Coe, doused the victim with gasoline and set him on fire after the victim became involved with defendant's girlfriend and continuously trespassed at defendant's residence.  He later said:  "I was gonna make sure if she was gonna leave she was gonna leave with somebody ugly."  A jury found defendant guilty of aggravated mayhem, arson causing great bodily injury, and criminal threats.  The trial court imposed an aggregate eight-year-to-life term.

On appeal, defendant contends (1) the trial court erred in instructing the jury that before it could consider lesser included offenses, it must first unanimously find defendant not guilty of the greater offense, and (2) the great bodily injury enhancement attached to his criminal threats conviction is unauthorized, or alternatively, unsupported by substantial evidence. We agree with the first contention but find the error harmless.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was living in his godfather's "mother-in-law's quarters" behind the main house. The victim was occasionally invited to the home by another resident but would also show up uninvited. Defendant's godfather didn't want the victim on the property and repeatedly said he was not allowed there. Defendant too, on multiple occasions, told the victim to leave the house over the course of six or eight months, but the victim always came back.

At the time of the incident, defendant had been dating his girlfriend for two or three months and she sometimes stayed with him in the house. At some point, the victim became romantically involved with defendant's girlfriend. The victim believed defendant was jealous of their relationship; defendant testified he was not.

A week or two before the incident, the victim came to the house and asked to be let inside. Defendant sprayed him in the face with wasp spray and threatened to use the spray as a flamethrower.

The day of the incident, the victim was at the residence with defendant's girlfriend. Defendant confronted the victim and told him to leave. The victim refused, insisting another resident had allowed him to be there. Defendant then escorted him off the property. But the victim soon returned, angering defendant. The victim made his way to one of the bedrooms in the house and sat on a couch with defendant's girlfriend.

Defendant went outside and poured gasoline into a cup. He returned with a lighter in his hand and splashed the victim in the face and the front of his body with the gasoline.

2

Defendant said, " 'What do you think now motherfucker? I told you you're not suppose[d] to be here.' " He immediately began sparking the lighter close to the victim. Defendant told the victim he was going to set him on fire.

The victim got up and tried to leave, making it as far as the hallway. But defendant stood between him and the front door. Defendant's girlfriend was between the two men as defendant continued to reach around her and spark the lighter toward the victim. The victim testified he was fearful for his life and thought defendant was going to set him on fire, so he reached around defendant's girlfriend to punch defendant in the face.

As the victim ran toward the front door, he became engulfed in flames. The girlfriend cursed defendant and screamed at him to put out the flames. She covered the victim with a blanket in an effort to put out the flames and defendant helped. The victim eventually went to the front yard where he sat in front of a hose and let the water run over his body.

The victim suffered third degree burns on about 20 percent of his body. He was hospitalized for over two weeks and underwent multiple skin graft surgeries. He was left with burn scars on his extremities, chest, and chin, as well as permanent nerve damage.

At trial, a recording of defendant's jail visit with his sister was played for the jury. In it, he told his sister the victim was "mess[ing] around too much with my girl," and was "taking my girlfriend and I wasn't gonna fucking have that." When his sister said, "No girl is worth fighting over like that," defendant said, "I wasn't gonna lose her, I still love her." He also said "I was gonna make sure if she was gonna leave[,] she was gonna leave with somebody ugly." He also told his sister the victim "took two swings" at him, and he set him on fire in self-defense.

At trial, defendant testified he "threw the gas on [the victim] because he kept coming in there risking my place and my place to live. He was coming risking everything, my house, my job, my money, myself, my girl." Defendant later testified he

3

set the victim on fire in self-defense "to save [himself] from being beaten." He maintained he did not intend to kill, but feared the victim was armed with a gun or bolt cutters. He did not mention these weapons in the conversation with his sister at the jail.

When asked on cross-examination whether he knew lighting the victim on fire could have killed him, defendant responded that he knew it could "kill both of us."

## Verdicts and Sentencing

The jury found defendant guilty of aggravated mayhem (Pen. Code, § 205)[1], arson causing great bodily injury (§ 451, subd. (a)), and criminal threats (§ 422). The jury found defendant not guilty of attempted murder (§664, subd. (a)/§187, subd. (a)).

The trial court imposed an aggregate eight-year-to-life term, consisting of an indeterminate term of seven years to life for aggravated mayhem and a one-year deadly weapon enhancement (§ 12022, subd. (b)(1)). It also imposed an aggregate 22-year determinate term for arson causing great bodily injury and criminal threats, but stayed execution of those sentences under section 654.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] The imposed and stayed terms consisted of nine years for arson causing great bodily injury (the upper term), plus a five-year use of an accelerant enhancement (§ 451.1, subd. (a)(5)) and a one-year deadly weapon enhancement (§ 12022, subd. (b)(1)), as well as three years for criminal threats (the upper term) (§ 422), with a three-year great bodily injury enhancement (§ 12022.7, subd. (a)) and a one-year deadly weapon enhancement (§ 12022, subd. (b)(1)).

## DISCUSSION

## I.  Lesser Included Offenses Instruction

On appeal, defendant contends the trial court erred in instructing the jury that before it could consider a lesser included offense, it must first unanimously find defendant not guilty of the greater offense.[3]  The People concede the error, and we agree.

At trial, the jury was instructed on aggravated mayhem, and then the lesser included offenses of mayhem, simple battery, and simple assault.  Between each instruction the court told the jury, "Do not *consider* this crime unless you find the defendant not guilty of [the greater offense]."  (Italics added.)

We agree the instructions given were erroneous but find the error harmless.

## A.  Analysis

A jury may not return a guilty verdict on a lesser offense without unanimously finding the defendant not guilty of the greater offense.  However, nothing precludes a jury from *considering* lesser offenses during deliberations before returning a verdict on the greater offense.  (*People v. Kurtzman* (1988) 46 Cal.3d 322, 329.)  Accordingly, a "trial court errs if it instructs the jury 'not to "deliberate on" or "consider" ' a lesser included offense until the jury has acquitted the defendant of the greater offense."  (*People v. Hishmeh* (2020) 52 Cal.App.5th 46, 52-53, citing *Kurtzman*, at p. 335 and *People v. Olivas* (2016) 248 Cal.App.4th 758, 774 (*Olivas*).)

Thus, the trial court's instructions here ran afoul of *Kurtzman* and were in error.

---

[3]  The People contend defendant's argument is forfeited because his trial counsel failed to object to the instruction.  We disagree.  On appeal, the rule of forfeiture does not apply to an instruction that misstates the law.  (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.)

## B. Harmless Error Analysis

*Kurtzman* error is analyzed pursuant to *People v. Watson* (1956) 46 Cal.2d 818, 836.[4] (*Olivas, supra,* 248 Cal. App.4th at p. 775.) Reversal is required where it is reasonably probable the jury would have reached an outcome more favorable to the defendant without the error. (*Watson*, at pp. 836-837.) "[T]he *Watson* test for harmless error 'focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 956.)

Defendant maintains the error was prejudicial because his trial counsel argued defendant did not possess the specific intent to maim required for aggravated mayhem.[5] And, under the instructions given, the jury could not compare the elements of aggravated mayhem to those of simple mayhem, a general intent crime, to determine if the lesser offense more closely matched his culpability. Further, since the jury found defendant not guilty of attempted murder, it was reasonably probable it would have concluded he did

---

[4] Defendant maintains the error infringed on his federal constitutional rights and should be analyzed under *Chapman v. California* (1967) 386 U.S. 18, 24. We disagree. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1077, fn. 7 [finding *Kurtzman* error "appears to implicate California law only"].)

[5] The jury was instructed that, to find a defendant guilty of aggravated mayhem, "the people must prove that: 1. The defendant unlawfully and maliciously disabled or disfigured someone permanently; 2. When the defendant acted, *he intended to permanently disable or disfigure the other person*; AND 3. Under the circumstances, the defendant's act showed extreme indifference to the physical or psychological well-being of the other person." (§ 205; CALCRIM No. 800, italics added.)

not have the specific intent to maim the victim, especially because defendant took part in putting out the flames. We disagree.

Overwhelming evidence supported defendant's conviction for aggravated mayhem and thus there was no reasonable probability of a more favorable outcome absent the error. While defense counsel argued defendant lacked specific intent to maim, defendant's own words showed otherwise. The jury heard a recording of defendant saying he lit the victim on fire because if his girlfriend were to leave him, he was going to make sure she left with "someone ugly." Indeed, the inescapable result of dousing someone with gasoline and setting him alight is permanent disfiguration. Defendant had threatened to set the victim on fire in the past. On this occasion, defendant went outside, poured gasoline into a cup, went inside the house and approached the victim with the gasoline and a lighter. He then splashed the gas *on the victim's face*. Thus, the evidence overwhelmingly demonstrates specific intent to maim, and a more favorable outcome was not reasonably probable.

We are also unpersuaded by defendant's argument that by helping to put out the flames, he demonstrated lack of a specific intent to maim. By the time he helped extinguish the flames at the direction of his girlfriend, the offense was already completed and the permanent damage had been inflicted. Moreover, a reasonable jury could infer that putting out the flames was necessary to avoid damage to the interior of the house before the victim made his way outside.

We further note that, had the jury not been convinced beyond a reasonable doubt that defendant had the intent to permanently disfigure, nothing precluded it from returning a guilty verdict on the lesser included offense, based on the instructions given.

The contention therefore fails.

## II. Great Bodily Injury Enhancement

On appeal, defendant contends the great bodily injury enhancement sentence attached to his conviction for criminal threats (and stayed pursuant to section 654; see fn.

2, *ante*) is unauthorized, or alternatively, is not supported by substantial evidence. We disagree.

## A. Unauthorized Sentence

An unauthorized sentence is one that cannot " 'lawfully be imposed under any circumstance in the particular case.' " (*People v. Roth* (2017) 17 Cal.App.5th 694, 702-703; *People v. Scott* (1994) 9 Cal.4th 331, 354.)

A great bodily injury enhancement can be imposed upon "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice *in the commission of* a felony or attempted felony . . . ." (§ 12022.7, subd. (a), italics added.) " 'In the commission' of" has been interpreted to mean "*any time during and in furtherance of*" the underlying felony. (*People v. Bland* (1995) 10 Cal.4th 991, 999.)

To that, defendant argues great bodily injury cannot occur during the commission of criminal threats because a criminal threat is a "static" offense, completed once it is uttered. And since one can never inflict great bodily injury from the utterance of words, the attachment cannot be authorized. He is mistaken.

"A violation of section 422 [criminal threats] is not complete upon the issuance of a threat; it depends on the recipient of the threat suffering 'sustained fear' as a result of the communication."[6] (*People v. Wilson* (2015) 234 Cal.App.4th 193, 201; § 422.) And here, the victim's sustained fear was contributed to — in no small part — by defendant's

---

[6] The offense of making criminal threats requires that: (1) defendant willfully threatened to commit a crime that will result in death or great bodily injury to another person; (2) defendant made the threat with specific intent that the statement be taken as a threat, even if he did not intend to carry it out; (3) the threat was on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an *immediate prospect of execution of the threat*; (4) *the threat caused the victim to be in sustained fear* for his own safety or for his immediate family's safety; and (5) the victim's fear was reasonable under the circumstances. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 210, fn. 8.)

8

physical act of actually setting him ablaze.  While the verbal threat had already been uttered when the victim was injured, sustained fear arises over " 'a period of time "that extends beyond what is momentary, fleeting, or transitory." ' " (*Ibid*.)  Here, the injury was inflicted during the period in which the victim's fear was becoming sustained.  Moreover, not only did lighting the fire help to sustain the victim's fear, it also effectuated the "immediate prospect of execution of the threat."  (See fn. 6, *ante*.)

Thus, the injury occurred in the commission of the threat.  Therefore, the sentence is authorized.

## B.  Substantial Evidence

Defendant alternatively contends the great bodily injury enhancement attached to the criminal threat charge is unsupported by substantial evidence because the victim's injury occurred after the threat was completed and thus did not occur in the commission of the offense.  Again, we disagree.

Substantial evidence exists for the same reasons discussed above:  Defendant's physical conduct — culminating in his lighting the victim on fire — took place during the period the victim's fear was being sustained and that conduct facilitated the sustaining of that fear and effectuated the immediate prospect of execution of the threat.  Thus, there was substantial evidence the injuries were inflicted in the commission of the offense.  Therefore, the jury's verdict was supported by substantial evidence.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [a finding of "insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict"].)

Defendant's contention fails.

## DISPOSITION

The judgment is affirmed.

/s/
MURRAY, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
DUARTE, J.