Opinion
CHIN, J.
Defendant Jeffrey Allen Whitmer, the manager of a motorcycle dealership, arranged for the fraudulent sales of vehicles to fictitious buyers. A *735 jury convicted him of 20 counts of grand theft for 20 separate fraudulent sales. We must decide whether defendant was properly convicted of a separate theft for each vehicle fraudulently sold, or whether he could be convicted of only one count of grand theft because all of the sales were part of a single scheme. Resolution of the issue requires us to revisit language in People v. Bailey (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] (Bailey) that some Courts of Appeal have interpreted as permitting only one conviction of grand theft in circumstances like this.
We conclude that past appellate courts have interpreted Bailey more broadly than is warranted. We agree with the Court of Appeal in this case that a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme. We disapprove of Court of Appeal decisions that are inconsistent with this conclusion.
However, we also conclude we cannot constitutionally apply this mie to defendant. Under the law that has existed for decades, defendant could only have been convicted of a single count of grand theft. We cannot apply the new mie retroactively to him. Accordingly, and for this reason only, we reverse the judgment of the Court of Appeal, which had affirmed the judgment of conviction for the 20 counts of grand theft.
I. Facts and Procedural History
The Court of Appeal opinion, authored by Justice Manella, summarized the relevant facts: “The prosecution submitted evidence that [defendant], while acting as manager for a motorcycle dealership, arranged for the fraudulent sale of 20 motorcycles, motorized dirt bikes, all-terrain vehicles (ATVs), and similar recreational vehicles. In collaboration with Mordichi Mor, [defendant] arranged fraudulent sales to fictitious buyers, using falsified financing agreements and credit purchases, resulting in monetary losses to the dealership.” The Court of Appeal explained that each transaction resulting in a conviction “involved a different vehicle. The 20 transactions occurred on 13 different dates. With the exception of two dates, whenever more than one transaction occurred on a single date, the transactions involved distinct fictitious buyers. On the two dates a fictitious buyer purportedly bought more than one vehicle, the transactions involved separate paperwork and documentation.” The value of the stolen vehicles ranged from $9,100 to over $20,000 per vehicle, resulting in a total loss to the dealership of over $250,000.
As relevant here, a jury convicted defendant of 20 counts of grand theft, one count for each of the vehicles fraudulently sold. (Pen. Code, § 487.) It also found true an enhancement allegation that defendant took, damaged, or *736 destroyed property valued at more than $200,000. (Pen. Code, former § 12022.6, subd. (a)(2).) The court sentenced defendant to prison for a total of 12 years.
Defendant appealed, arguing, among other contentions, that he could be convicted of one count of grand theft only. After analyzing our opinion in Bailey, supra, 55 Cal.2d 514, and reviewing the cases Bailey cited and later cases interpreting Bailey, the Court of Appeal concluded that defendant was properly convicted of one count of grand theft for each vehicle stolen. Recognizing that “other appellate courts have adopted a contrary interpretation of Bailey,” it “urge[d]” this court “to revisit Bailey, as the guidance it offers regarding the aggregation of grand thefts is difficult to discern.”
We granted defendant’s petition for review .and later limited review to the question of whether he was properly convicted of multiple counts of grand theft.
II. Discussion
The evidence shows that each count of grand theft was based on a separate and distinct act. Each transaction resulting in a stolen vehicle, even those transactions occurring on the same date, involved separate paperwork and documentation. We must decide whether defendant was properly convicted of one count of grand theft for each vehicle he stole, as the Court of Appeal found, or whether, as he argues, he can only be convicted of one count of grand theft. Central to this question is the proper interpretation of our opinion in Bailey, supra, 55 Cal.2d 514.
In Bailey, the defendant fraudulently told a welfare office that a man she had been living with had left her home. Later, and due to this misrepresentation, she received a series of welfare payments that she was not entitled to receive. She was convicted of one count of grand theft based on her receiving this series of welfare payments. (Bailey, supra, 55 Cal.2d at pp. 515-516.) Each payment, individually, would have constituted petty theft, but the payments totaled more than $200, which at the time constituted grand theft. (Id. at p. 518 & fn. 3.) This court had to decide whether the defendant “was guilty of grand theft or of a series of petty thefts since it appears that she obtained a number of payments, each less than $200 but aggregating more than that sum.” (Id. at p. 518.) The trial court had “instructed the jury that if several acts of taking are done pursuant to an initial design to obtain from the owner property having a value exceeding $200, and if the value of the property so taken does exceed $200, there is one crime of grand theft, but that if there is no such initial design, the taking of any property having a value not exceeding $200 is petty theft.” (Ibid.)
*737 We found the defendant was properly convicted of grand theft. “Several recent cases involving theft by false pretenses have held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft. [Citations.] The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct intents. The same rule has been followed in larceny and embezzlement cases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. [Citations.]” (Bailey, supra, 55 Cal.2d at pp. 518-519.)
Particularly relevant to the issue presented here, the Bailey court added the following: “Whether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan. [Citation.] In the following cases it was held that each receipt of property obtained by false pretenses constituted a separate offense for which the defendant could be separately charged and convicted. [Citations.] Although none of these decisions discussed the rule set forth above, it does not appear that the convictions would have been affirmed had the evidence established that there was only one intention, one general impulse, and one plan.” (Bailey, supra, 55 Cal.2d at p. 519, italics added.)
Citing the language italicized in the previous paragraph from Bailey, supra, 55 Cal.2d at page 519, defendant argues there can only be one grand theft if multiple acts of grand theft are pursuant to a single intention, a single impulse, and a single plan. He further argues the thefts of this case come within this rule. As we explain below, the argument finds support in later Court of Appeal opinions.
Cases the Bailey court cited, but did not overrule, including cases from this court, support finding multiple counts of grand theft in this case. The Court of Appeal reviewed those cases, beginning with People v. Stanford (1940) 16 Cal.2d 247 [105 P.2d 969] (Stanford). In Stanford, the Court of Appeal explained, “a lawyer entrusted with control of an elderly woman’s property obtained her permission to use her funds to buy property for her. (Id. at pp. 248-249.) He took title to the property in his own name and made three payments of the entrusted funds for its purchase, each of which exceeded the threshold amount constituting grand theft. (Id. at pp. 248-250.) Following his conviction of three counts of grand theft, the Stanford court affirmed, stating: *738 ‘There is no merit in appellant’s contention that the entire transaction could not constitute more than one offense, and that the conviction of three separate offenses was error. ... In the present case the evidence showed that the thefts referred to in the first three counts of the indictment were separate and distinct transactions, which occurred on different dates, and involved the taking of different sums of money. Such separate transactions constituted separate offenses. [Citations.]’ (Id. at pp. 250-251.)”
The Court of Appeal also reviewed other cases that Bailey cited: “Among the cited cases are two Supreme Court decisions, People v. Rabe (1927) 202 Cal. 409 [261 P. 303] (Robe) and People v. Ashley (1954) 42 Cal.2d 246 [267 P.2d 271] (Ashley). In Rabe, the defendant fraudulently obtained money and property by falsely representing that he intended to use the funds and property to establish a corporation. (Robe, supra, 202 Cal. at p. 417.) From one individual he secured investments on three separate dates: a payment for $1,250, a payment for $4,000, and a contribution of real property worth $11,000. (Ibid.) Following his conviction of three counts of grand theft based on these acts, the Supreme Court rejected his contention that he had committed only a single offense, reasoning that ‘[i]n each count of the indictment the property . . . was obtained at a different time and was different in character and value . . . .’ (Id. at p. 413.) In addition, the court stated that when a defendant obtains property through false representations to the victim, the defendant may be separately punished for obtaining additional property from the victim, even though the initial misrepresentations ‘were still operating upon the mind’ of the victim. (Ibid.)
“In Ashley, the manager of a corporation obtained funds from two individuals by falsely representing that the funds would be used for one of the corporation’s business projects. (Ashley, supra, 42 Cal.2d at pp. 252-257.) Because the manager received two payments from each individual, each of which exceeded the threshold amount for grand theft, he was charged with four counts of grand theft. (Ibid.) Before the Supreme Court, he contended that he could be convicted on only one count of grand theft with respect to each victim. (Id. at p. 273.) Relying on Rabe, the court rejected this argument. (Ibid.)
“In the remaining cases cited in Bailey, appellate courts reached similar conclusions on similar facts. (People v. Barber (1959) 166 Cal.App.2d 735, 736-738 [333 P.2d 777] [defendant properly convicted of two counts of grand theft after obtaining two payments exceeding minimum necessary for grand theft from single victim who intended to invest in defendant’s bogus mining company]; People v. Caldwell (1942) 55 Cal.App.2d 238, 242-243, 252 [130 P.2d 495] [defendant who falsely represented he was providing insurance to victim properly convicted of five counts of grand theft based on five *739 separate premium payments, each exceeding minimum necessary for grand theft]; People v. Ellison (1938) 26 Cal.App.2d 496, 497-499 [79 P.2d 732] [defendants properly convicted of three counts of grand theft for receiving three separate payments from creditor, each exceeding minimum necessary for grand theft, based on presentation of falsified contracts to creditor indicating that defendants were selling goods to others].”
Noting that the Bailey court did not overrule any of these cases, the Court of Appeal concluded that “Stanford, Robe, and Ashley embody the reasonable view that a defendant who repeatedly takes property exceeding the requisite amount for grand theft from a victim through separate transactions [citation] — but pursuant to a single scheme or overarching misrepresentation— commits more crimes than a defendant who takes such property only once. Indeed, a contrary view would give a ‘felony discount’ to the thief who perfects a scheme to commit multiple acts of grand theft.”
Several Court of Appeal decisions have interpreted Bailey, supra, 55 Cal.2d 514, differently. (See generally People v. Jaska (2011) 194 Cal.App.4th 971, 980-985 [123 Cal.Rptr.3d 760].) As the Court of Appeal explained, “some courts have held that Bailey bars multiple convictions for grand theft when the individual thefts arise from a recognizable plan or scheme, even though each theft is separate and distinct, and involves property or money exceeding the amount needed for grand theft. The principal case is People v. Kronemyer (1987) 189 Cal.App.3d 314, 324-325 [234 Cal.Rptr. 442] (Kronemyer), which involved a lawyer who acted as the conservator of an elderly man. After the lawyer decided to loot the man’s estate, he took all the funds in four bank accounts, each of which contained more than $8,000. (Id. at pp. 327-328.) Following the lawyer’s conviction of four counts of grand theft based on these transactions, the appellate court reversed three of the four convictions, reasoning that ‘[t]he fact these physically separated funds required four transactions does not avoid the single-plan single-offense rule discussed in [Bailey].’ (Id. at p. 364.)” (See People v. Brooks (1985) 166 Cal.App.3d 24 [210 Cal.Rptr. 90] [reversing 12 of 13 counts of grand theft and one count of petty theft arising from the defendant’s theft of auction proceeds]; People v. Packard (1982) 131 Cal.App.3d 622 [182 Cal.Rptr. 576] [reversing two of three grand theft convictions based on the submission of a series of false invoices]; People v. Gardner (1979) 90 Cal.App.3d 42 [153 Cal.Rptr. 160] [reversing three of four counts of grand theft of animal carcasses]; People v. Richardson (1978) 83 Cal.App.3d 853 [148 Cal.Rptr. 120] [reversing three of four counts of attempted grand theft based on attempting to obtain payments on four fraudulent warrants]; People v. Sullivan (1978) 80 Cal.App.3d 16 [145 Cal.Rptr. 313] [reversing eight of nine related counts of grand theft based on receipt of a series of cashier’s checks pursuant to a single fraudulent scheme].)
*740 The Court of Appeal declined to follow these cases, finding them contrary to People v. Ashley, supra, 42 Cal.2d 246, Stanford, supra, 16 Cal.2d 247, and People v. Rabe, supra, 202 Cal. 409.
We thus have cases distinguished but not overruled in Bailey, supra, 55 Cal.2d 514, that support multiple convictions of grand theft in this case, post-Bailey Court of Appeal cases relying on Bailey that would prohibit such multiple convictions, and Bailey itself. We must decide what the proper rule should be. We need not decide whether the Bailey rule regarding a series of petty thefts applies similarly to a series of grand thefts. As Bailey's discussion of earlier cases upholding multiple convictions of grand theft implies, Bailey is factually distinguishable. The Bailey rule must be interpreted in light of its facts.
In Bailey, the defendant committed a single misrepresentation and then received a series of welfare payments due to that misrepresentation. Other than omitting to correct the misrepresentation and accepting the payments, the defendant committed no separate and distinct fraudulent acts. As the Bailey court explained, the trial court had instructed the jury it could aggregate into a single count of grand theft a series of petty thefts done pursuant to an “initial design” to obtain property exceeding the threshold amount that makes the crime grand theft. (Bailey, supra, 55 Cal.2d at p. 518.) The evidence supported a jury finding that the defendant did have an initial design to keep receiving the welfare payments until they exceeded that threshold amount. Accordingly, the court concluded that defendant had not committed “separate and distinct” offenses. (Id. at p. 519.) But in this case, and, generally, in the earlier cases the Bailey court distinguished, the defendant committed separate and distinct fraudulent acts.
This makes all the difference. When the Bailey court said that the earlier cases upholding multiple convictions of grand theft would not have done so “had the evidence established that there was only one intention, one general impulse, and one plan” (Bailey, supra, 55 Cal.2d at p. 519), it must have had this distinction in mind. Bailey concerned a single fraudulent act followed by a series of payments. The cases Bailey distinguished generally involved separate and distinct, although often similar, fraudulent acts. Accordingly, those cases involved “separate and distinct” (ibid.) offenses warranting separate grand theft convictions. This case is not similar to Bailey but rather to the cases it distinguished. Defendant committed a series of separate and distinct, although similar, fraudulent acts in preparing separate paperwork and documentation for each fraudulent transaction. Each fraudulent act was accompanied by a new and separate intent to commit that fraud.
As the Court of Appeal put it, a serial thief should not receive a “ ‘felony discount’ ” if the thefts are separate and distinct even if they are *741 similar. Accordingly, we conclude that a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme. Without deciding whether any particular post-Bailey Court of Appeal opinion was incorrect under its facts, we disapprove of any interpretation of Bailey that is inconsistent with this conclusion.
Defendant argues that principles of stare decisis prevent us from overruling Bailey. (See generally People v. Latimer (1993) 5 Cal.4th 1203, 1212-1216 [23 Cal.Rptr.2d 144, 858 P.2d 611].) But we are merely interpreting Bailey, not overruling it. To be sure, we are disapproving some post-Bailey Court of Appeal decisions. But those cases misinterpreted Bailey and overlooked the fact that it cited and distinguished, but did not overrule, earlier cases, including some from this court, that support finding multiple grand thefts in cases like this. We are merely reaffirming those earlier cases. Under the circumstances, considerations of stare decisis “do not weigh as heavily” as in some cases. (People v. Correa (2012) 54 Cal.4th 331, 344 [142 Cal.Rptr.3d 546, 278 P.3d 809].)
Defendant also argues that legislative inaction shows the Legislature supports the prevailing interpretation of Bailey. It is true that the Legislature has not addressed this precise point. It has not overruled Bailey's holding permitting the accumulation of a series of petty thefts into one grand theft, or the appellate courts’ broad interpretation of Bailey. In some circumstances, legislative inaction might indicate legislative approval of a judicial decision. (See People v. Williams (2001) 26 Cal.4th 779, 789-790 [111 Cal.Rptr.2d 114, 29 P.3d 197].) “However, legislative inaction alone does not necessarily imply legislative approval. ‘The Legislature’s failure to act may indicate many things other than approval of a judicial construction of a statute: the sheer pressure of other and more important business, political considerations, or a tendency to trust to the courts to correct their own errors ....’” (People v. King (1993) 5 Cal.4th 59, 75 [19 Cal.Rptr.2d 233, 851 P.2d 27].) We see nothing in the legislative inaction that prevents this court from interpreting Bailey for the first time and reaching a conclusion consistent with the cases that Bailey discussed and distinguished.
Moreover, our conclusion is fully consistent with actions the Legislature has taken. Penal Code section 12022.6, subdivision (a), imposes sentence enhancements when the defendant “takes, damages, or destroys any property in the commission or attempted commission of a felony” if the loss exceeds specified amounts. Subdivision (b) of that section permits the aggregation of losses from multiple charges if they “arise from a common scheme or plan.” (Pen. Code, § 12022.6, subd. (b).) The Legislature added the “common scheme or plan” language in 1992. (See People v. Green (2011) 197 *742 Cal.App.4th 1485, 1493 [130 Cal.Rptr.3d 290].) This language indicates the Legislature intended, or at least was aware, that multiple convictions can arise from multiple acts even if part of a common scheme or plan.
Defendant also contends we cannot constitutionally apply the rule we adopt to him. Here we agree. “Courts violate constitutional due process guarantees [citations] when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct.” (People v. Blakeley (2000) 23 Cal.4th 82, 91 [96 Cal.Rptr.2d 451, 999 P.2d 675]; see People v. Correa, supra, 54 Cal.4th at pp. 344-345.) The Attorney General argues that Bailey does not prevent applying our interpretation to defendant. We agree. The problem, however, is not Bailey but the long, uninterrupted series of Court of Appeal cases, beginning with People v. Sullivan, supra, 80 Cal.App.3d 16, decided in 1978, and including People v. Kronemyer, supra, 189 Cal.App.3d 314, decided in 1987, that have consistently held that multiple acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft.
In People v. Blakeley, supra, 23 Cal.4th at pages 91-92, we held that an unintentional killing in unreasonable self-defense is voluntary manslaughter. However, because three Court of Appeal decisions had concluded, without contradiction, that such a killing was involuntary manslaughter, we did not apply the new rule retroactively to the defendant. Under the circumstances, our decision was “an unforeseeable judicial enlargement of the crime of voluntary manslaughter, and thus may not be applied retroactively to defendant.” (Id. at p. 92.) We reach a similar conclusion here. We do not suggest that any time we resolve a conflict between Court of Appeal decisions in favor of the rule less favorable to the defendant, we may not apply that resolution to that defendant. But given the numerous, and uncontradicted, Court of Appeal decisions over a long period of time that reached a conclusion contrary to ours, we believe today’s holding is also an unforeseeable judicial enlargement of criminal liability for multiple grand thefts. Accordingly, that holding may not be applied to defendant.
In finding the enhancement allegation true that defendant took property valued at more than $200,000, the jury necessarily found that the grand thefts arose “from a common scheme or plan.” (Pen. Code, § 12022.6, subd. (b).) The law as it had existed for decades before defendant committed his crimes permitted conviction of only one count of grand theft under those circumstances. Because defendant is entitled to the benefit of that law, he cannot be convicted of more than one count of grand theft. For this reason, we reverse the Court of Appeal’s judgment, which had affirmed the grand theft convictions.
*743 III. Conclusion
We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Baxter, J., Werdegar, J., Corrigan, J., and Liu, J., concurred.