Filed 4/24/25  P. v. Jimenez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083665 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS322176) |
| JOSE MARIA JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert O. Amador, Judge.  Affirmed in part, reversed in part, and remanded.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Paige B. Hazard and Steve Oetting, Deputy Attorneys General for Plaintiff and Respondent.

In *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*), our Supreme Court considered whether a single fraudulent act resulting in multiple petty larcenies, which added together exceeded the grand theft value definition,

supported finding a defendant "guilty of grand theft or of a series of petty thefts." (*Id.* at p. 518.) *Bailey* endorsed the findings from several appellate court cases that "where a number of takings, each less [than the grand theft amount] but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft." (*Id.* at p. 519.)

Almost 45 years later in *People v. Whitmer* (2014) 59 Cal.4th 733, 737 (*Whitmer*), our Supreme Court revisited *Bailey*'s " 'one intention, one general impulse, and one plan' " rule used to aggregate multiple petty thefts into a single grand theft. The question in *Whitmer* was whether multiple grand thefts committed over time by one person against one victim were "*separate and distinct act[s]*" which could be charged separately, or part of " 'one intention, one general impulse, and one plan.' " (*Id.* at p. 736–737, italics added.) *Whitmer* concluded "that a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme."[1] (*Id.* at p. 741.)

The instant case is a variation on *Bailey* and *Whitmer*. Where *Bailey* considered the propriety of combining multiple petty thefts into a single grand theft, and *Whitmer* addressed the boundaries of when multiple grand thefts constituted "one intention, one general impulse, and one plan"[2] or "separate and distinct acts,"[3] in this case we examine whether multiple acts of petty theft by one person from one victim may be aggregated into *separate*

---

[1]    We interpret the word "scheme" as used in *Bailey* and *Whitmer* to mean modus operandi or plan. (See *Whitmer*, *supra*, 59 Cal.4th 733 at p. 748 (conc. opn. of Liu, J.).)

[2]    *Bailey*, *supra*, 55 Cal.2d at page 519.

[3]    *Whitmer*, *supra*, 59 Cal.4th at page 741.

2

*and distinct* grand theft charges, or must the petty thefts be considered part of *one intention, general impulse, and plan.*

We conclude it is possible to find that multiple petty thefts by one person from the same victim can be aggregated into separate and distinct grand thefts. However, here instructional error prejudicially deprived the jury of important legal concepts necessary to determine whether the defendant was guilty of one or multiple grand thefts, one or more petty thefts, or a combination of grand thefts and petty thefts. Therefore, we reverse the grand theft convictions while affirming the uncontested petty theft verdicts.

## FACTUAL AND PROCEDURAL BACKGROUND

On dozens of occasions between December 28, 2020, and October 17, 2023, Jose Maria Jimenez stole similar goods from a single Marshalls retail store location in San Ysidro, California. He stole small items that were easy to carry, such as fragrances, hats, sunglasses, wallets, clothing items, and electronics. The value of the goods stolen during each single incident never reached $950, the threshold for grand theft under Penal Code[4] section 487, subdivision (a). The People separated the individual theft events into multiple charges, accusing Jimenez of three counts of grand theft (§ 487, subd. (a)), three counts of petty theft (§§ 484 & 490.5), and one count of violating a stay away order (§ 166, subd. (a)(4)).

Specifically, in count 1, the People charged Jimenez with committing grand theft based on thefts from the Marshalls store on at least 14 different days between December 28, 2020, and February 12, 2021: December 28, 2020, January 4, 2021, January 9, 2021, January 10, 2021, January 11, 2021, January 15, 2021, January 16, 2021, January 20, 2021, January 21, 2021, February 3, 2021, February 4, 2021, February 5, 2021, February 10, 2021,

---

4      Undesignated statutory references are to the Penal Code.

and February 12, 2021. The value of items stolen during this period totaled approximately $2,099.43, but no single day involved a theft of over $950.

On February 13, 2021, law enforcement arrested Jimenez. The arrest concluded the acts constituting count 1. As to the thefts committed between December and February, Jimenez told police that he shoplifted the items to sell and then purchase heroin. He also told police he chose that Marshalls location because of its close proximity to the border, which he crossed daily from his house in Tijuana. He also knew that Marshalls would not do anything when he walked out of the store with the merchandise.

In count 2, the People charged Jimenez with committing grand theft from the same Marshalls store based on a series of petty larcenies occurring over 15 different days, starting about four months after count 1: June 10, 2021, June 13, 2021, June 15, 2021, June 19, 2021, July 1, 2021, July 3, 2021, July 5, 2021, July 8, 2021, July 11, 2021, July 14, 2021, July 17, 2021, July 25, 2021, July 26, 2021, July 29, 2021, and August 6, 2021. The value of items stolen during this period totaled approximately $3,096.43, but again, no single day involved a theft of over $950.

In count 3, the People charged Jimenez with violating a February 17, 2021, order to stay 500 feet from the Marshalls store. At trial, there was evidence that Jimenez approached and entered the store on August 6, 2021, despite the stay away order.

In count 4, which occurred about *five days* after the events in count 2, the People charged Jimenez with petty theft for stealing approximately $356 worth of merchandise from the same Marshalls store on August 11, 2021.

In count 5, the People charged Jimenez with petty theft for stealing approximately $540 worth of merchandise from the Marshalls store on December 6, 7, and 8, 2021.

4

In count 6, which started about four months after counts 2 and 4, the People charged Jimenez with committing grand theft based on at least 10 thefts from the Marshalls store: January 9, 2022, January 10, 2022, January 12, 2022, January 13, 2022, January 18, 2022, January 19, 2022, January 23, 2022, January 26, 2022, January 28, 2022, and, five weeks later, on March 2, 2022. The value of items taken during this period was approximately $1,838.43, but no single day involved a theft of over $950.

In count 7, the People charged Jimenez with committing petty theft for stealing $129.99 worth of merchandise from the same Marshalls store on October 17, 2023.

The defense moved for a judgment of acquittal on counts 2, 4, 5, 6, and 7. Citing *People v. Jaska* (2011) 194 Cal.App.4th 971, Jimenez contended he could only be convicted of a single count of grand theft that covered all individual petty thefts because he harbored but one intention, impulse, and plan.

The prosecution responded that the approximately four-month gaps between the thefts provided evidence that each set of them involved a different plan, and the number of grand thefts was a question for the jury. Relying on *People v. Whitmer* (2014) 59 Cal.4th 733, the trial court denied the defense's motion.

Among its instructions to the jury, the court provided the following modified CALCRIM No. 1802[5] instruction regarding aggregating the value of petty thefts into a single grand theft:

> If you conclude that the defendant committed more than
> one theft, you must then decide if the defendant committed

---

[5]    The CALCRIM No. 1802 version given by the trial court became effective in September 2023.

multiple petty thefts or a single grand theft. To prove that the defendant is guilty of a single grand theft, the People must prove that:

1. The defendant committed multiple thefts of property;

2. The combined value of the property was over $950; and

3. In obtaining the property, the defendant was motivated by one intention, one general impulse, and one plan.

If you conclude that, as to one or more alleged thefts, the People have failed to prove grand theft, the thefts you have found proven are petty thefts.

In closing argument, the prosecution emphasized that to establish grand theft, it needed to prove that "the defendant was motivated by one intention, one general impulse, and one plan," with "all three" factors present, because they are "put together with an 'and.'" The prosecution contended there were three separate instances of one intention, impulse, and plan to support three separate convictions of grand theft because, during each period, Jimenez committed thefts frequently before taking a four-month long break before committing the next series of thefts. Defense counsel then argued that there were either a series of petty thefts or one single grand theft based on one single intention, impulse, and plan that carried through the duration of the case.

The court instructed the jury that if it believed thefts occurred, but that the People did not prove grand theft, they could return convictions on petty theft, the lesser included offense to grand theft. However, the verdict forms in the record before us only allowed the jury an opportunity to find up to three distinct grand thefts, but not one overarching grand theft.

6

Nonetheless, the jury focused in on the issue anyway. It sent this question to the trial judge:

> If we believe the defendant did not have separate intention, impulse, and plan each time but, rather, *had one overall intention, impulse, and plan,* do we have to find the defendant not guilty for Counts 1, 2, and 6; or can we say he is guilty for one count of grand larceny *over the December 2020 to March 2022 time period*?
>
> Or if we believed that, could we assign guilty to just one of the counts of grand larceny to cover the whole period?
>
> If so, does it matter which count? (Italics added.)

The court then conferred with the parties. The court explained that the initial instruction was based on the language from the *Bailey* case but that it intended to provide "the actual jury instruction" instead.[6] Defense counsel then asked, "Your Honor, are you not going to give the further information that we discussed on the first version?", and the court answered no. The court explained: "[W]e already apparently had a pinpoint instruction, which

---

[6]      In fact, as noted ante, the CALCRIM No. 1802 instruction already given to the jury by the court was the latest version, dating from September 2023. The instruction's revision followed an amendment to section 487 adding subdivision (e), which became effective January 2023. (Judicial Council of Cal., Advisory Com. on Criminal Jury Instructions Rep., Jury Instructions: Criminal Jury Instructions (2023 Supplement) (2023) p. 8.) Assembly Bill No. 2356 (Reg Sess. 2021–2022) amended section 487, subdivision (e), providing in part that thefts "may properly be aggregated to charge a count of grand theft, if the acts are motivated by one intention, one general impulse, and one plan." (Stats. 2022, ch. 22, § 1, eff. Jan. 1, 2023.) Section 2 of Assembly Bill No. 2356 specifically stated, "this act is declaratory of existing law in *People v. Bailey* (1961) 55 Cal.2d 514." It is that language which CALCRIM No. 1802 adopted in 2023. Consequently, the new instruction uses *Bailey*'s exact terminology. The pre-September 2023 CALCRIM No. 1802 instruction was intended to communicate *Bailey*'s meaning without *Bailey*'s precise wording. (See, e.g., CALCRIM No. 1802 (April 2012), p. 1281.)

was separate from what the actual 1802 is.[7]  So I'm going to give 1802."

Defense counsel responded:

> I would be objecting and asking the court to please reconsider and give the test [*sic*] of the information that we discussed just previously.
>
> I do believe that the added information and the additional pinpoint is vital to support the current case law for appellate purposes and what is clearly the law and what is also clearly the discrepancy between the jurors.

The court declined the defense's request to include the "pinpoint" cite. Instead, the court responded to the jury's question as follows:

> The court has provided you with a copy of Instruction 1802 which is a correct statement of the law.  Please disregard the prior 1802 instruction entirely.
>
> Each count of Grand Theft (Counts 1, 2 and 6) are separate counts and must be decided individually.  You must find whether the elements of each charge have been proven beyond a reasonable doubt for each charged time period to find the defendant guilty of a specific count.  If you cannot find the elements for a specific count to be true beyond a reasonable doubt you must find the defendant not guilty of that count.

The court then retreated to the old version of CALCRIM No. 1802, and gave the jury this instruction version:

> If you conclude that the defendant committed more than one theft, you must then decide if the defendant committed multiple petty thefts or a single grand theft.  To prove that the defendant is guilty of a single grand theft, the People must prove that:
>
>> 1. The defendant committed theft of property from the same owner or possessor on more than one occasion;

7      The record here is unclear as to what the court is referencing.  We interpret the comment to mean the original CALCRIM No. 1802 given to the jury.

2. The combined value of the property was over $950; AND

3. *The defendant obtained the property as part of a single, overall plan or objective.*

If you conclude that, the People have failed to prove grand theft, any multiple thefts you have found are petty thefts. (Italics added.)

The verdict forms still failed to provide the jury a way to find a single umbrella grand theft charge covering the dates included in counts 1, 2, and 6.

The jury convicted Jimenez of all counts. The trial court sentenced Jimenez to four years and four months for the three felony counts (three years on count 1, eight months consecutive on count 2, and eight months consecutive on count 6) and 20 months for the four misdemeanor counts (six months consecutive on count 3, four months consecutive on count 4, four months consecutive on count 5, and six months consecutive on count 7), for a total term of six years.

## DISCUSSION

This case implicates the California Supreme Court's decisions in *Bailey* and *Whitmer*. Jimenez does not, nor did he ever, dispute that he committed each petty theft incident giving rise to the charges he faced. Rather, Jimenez first contends substantial evidence did not exist allowing *aggregation* of any incidents of petty theft into a grand theft conviction under *Bailey*; alternatively, he argues that the thefts can only be joined into a single count of grand theft, even under *Whitmer*. Additionally, Jimenez argues the jury instruction on aggregating petty thefts erroneously excluded language from *Bailey*.

Section 487, subdivision (a), defines grand theft as a theft of property "of a value exceeding nine hundred fifty dollars ($950)." Petty theft is any other theft. (§ 488.) In *Bailey*, the California Supreme Court announced a

9

rule that, "where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft."[8] (*Bailey, supra*, 55 Cal.2d at p. 519.) But *Bailey* further explained that "[w]hether a series of wrongful acts constitutes a single offense or multiple offenses depends upon the facts of each case, and a defendant may be properly convicted upon separate counts charging grand theft from the same person *if the evidence shows that the offenses are separate and distinct* and were not committed pursuant to one intention, one general impulse, and one plan." (*Ibid.*, italics added.) In *Bailey*, a single false statement to a welfare agency generated multiple support checks to the defendant. No single check amounted to the existing grand theft threshold at the time, rather each payment alone qualified merely as a petty theft. However, the court determined that the succession of petty thefts put in motion by the single misrepresentation from the defendant constituted one grand theft. (*Id.* at pp. 515–516, 519–520.) The court affirmed the trial court's instruction to jurors "that if several acts of taking are done *pursuant to an initial design* to obtain from the owner property having a value exceeding, $200, and if the value of the property so taken does exceed $200, there is one crime of grand theft, but that if there is no such initial design, the taking of any property having a value not exceeding $200 is petty theft." (*Id.* at p. 518, italics added.)

---

8     Effective January 1, 2025, the legislature added this language to section 487, subdivision (e): "Evidence that distinct acts are motivated by one intention, one general impulse, and one plan may include, but is not limited to, evidence that the acts involve the same defendant or defendants, are substantially similar in nature, or occur within a 90-day period." (Assem. Bill No. 2943 (2023–2024 Reg. Sess.), Stats. 2024, ch. 168, § 2.)

In *Whitmer*, the court faced a factual scenario involving a defendant, the manager of a motorcycle dealership, who "prepar[ed] separate paperwork and documentation for each fraudulent transaction" involving 20 fraudulent sales from the dealership on 13 separate dates, each over the threshold for grand theft. (*Whitmer, supra*, 59 Cal.4th at pp. 735, 740.) The court determined that "a defendant may be convicted of multiple counts of grand theft based on *separate and distinct acts* of theft, even if committed pursuant to a single overarching scheme." (*Id.* at p. 741.) To support multiple convictions, each separate and distinct act must be "accompanied by a new and separate intent." (*Id.* at p. 740.)

The *Whitmer* court distinguished *Bailey*, determining that in *Bailey* aggregation was proper because "the defendant committed a single misrepresentation and then received a series of welfare payments due to that misrepresentation" and because "[o]ther than *omitting* to correct the misrepresentation and accepting the payments, the defendant committed no separate and distinct fraudulent acts." (*Whitmer*, *supra*, 59 Cal.4th at p. 740.) The court explained that in *Bailey*, "[t]he evidence supported a jury finding that the defendant did have an initial design to keep receiving the welfare payments until they exceeded that threshold amount. Accordingly, the court concluded that defendant had not committed 'separate and distinct' offenses." (*Ibid.*) Because of that distinction, the court did not overrule *Bailey*'s rule that thefts committed pursuant to " 'one intention, one general impulse, and one plan' " could result in but one charge. (*Ibid.*)

Here, the jury's question to the court reached the heart of whether the thefts were part of "one overall intention, impulse, and plan" or were "separate intention[s]" committed as part of a single overarching scheme. Answering that inquiry correctly was critical to the jury's resolution of the

11

case.  "A court also has 'a general obligation to "clear up any instructional confusion expressed by the jury.' " [Citation.]  This obligation arises under section 1138, which provides that if deliberating jurors 'desire to be informed on any point of law arising in the case, . . . the information required must be given' to them in court." (*People v. Doane* (2021) 66 Cal.App.5th 965, 980, citing *People v. Dykes* (2009) 46 Cal.4th 731, 802.)  We review claims of error based on that obligation for abuse of discretion.  (*Doane*, at p. 980.)  Under these circumstances, we conclude the trial court's answer to the jury's question failed to address the jury's expressed confusion.

The jury's inquiry centered on the defense theory of the case.  Prior to closing argument, the trial court explained that concept, stating to Jimenez, "I asked your attorney if she was essentially going to try to limit what your exposure is by essentially telling the jury just to convict you of one count of the grand theft.  I know she has had the discussion with you at this particular time.  You agree to that strategy at this time; is that correct?"  Jimenez answered affirmatively.  Then, in closing argument, defense counsel told the jury, "[I]f you find that the petty thefts throughout the course that we discussed amounted to a grand theft, then the law requires you to find that it is a single grand theft."  The prosecution objected to this statement as misstating the law, but the court overruled the objection.

Yet when the jury later sent the question to the court asking if they could find one count of grand theft "[i]f [they] believe[d] the defendant did not have separate intention, impulse, and plan each time but, rather, had one overall intention, impulse, and plan," the court answered that they could not so find, that they could only examine each count individually.  And, indeed, the jury had no way to find the defendant guilty of a single grand theft that covered the entire period.  However, the court's answer only highlighted the

12

gap in the jury's instructions on the law: *Bailey* would generally permit the aggregation of petty thefts committed over a long period into a single grand theft when supported by evidence showing "one intention, one general impulse, and one plan." (*Bailey, supra*, 55 Cal.2d at p. 519.) *Whitmer* would allow multiple grand theft convictions "based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Whitmer, supra*, 59 Cal.4th at p. 741.) Here, the defense argument placed this case in the *Bailey* arena, while the prosecution position grounded the case in *Whitmer*. The jury's question reflected this conflict, as the jurors appeared to struggle with charges that did not align with their query: there was no overarching grand theft charge encompassing all the petty thefts. The jury could only consider the charges before it, even if they wanted another option.

Two conclusions flow from the record. First, the court should have communicated in its answer to jurors that while the law would generally permit a finding of a single grand theft, the prosecution in this case had elected not to charge Jimenez with a single grand theft covering the entire time span and, therefore, that option was not available to them. If the jury found one overarching grand theft beginning in December 2020 and ending in October 2023, it would have been required to acquit Jimenez of the more limited grand theft counts with which he *had* been charged.

Second, reinstructing the jury with an outdated CALCRIM was not helpful. Instead of being told that aggregation is proper if the defendant had "one intention, one general impulse, and one plan," (CALCRIM No. 1802) the jury was instructed that aggregation is proper if the defendant had "a single,

13

overall plan or objective."[9] (Former CALCRIM No. 1802.) Whether one finds the different language in the older instruction any different in meaning than that found in the current instruction, it remains that the trial court's answer to the jury did not respond to the jurors' question about the possibility of finding one grand theft covering the entire period, rather than the three grand theft counts being considered by jurors.

While giving the old version of CALCRIM No. 1802 may not be prejudicial error if provided as the only version of that instruction, it became prejudicial error when considered with the court's otherwise problematic answer to the jury's question.[10] The jury heard even from the prosecution

[9] "An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) Given our holding in this matter we need not resolve whether the older CALCRIM language given to the jury adequately captured the *Bailey* rule.

[10] Notably, the People do not argue that the court's revised CALCRIM No. 1802 instruction was correct or that the error was harmless. Rather, they contend only that Jimenez invited any error or forfeited the contention by agreeing to the court's instruction.

We disagree that the defense forfeited the claim of instructional error or that the defense invited error. Based on the court and defense counsel's discussion and reference to a "pinpoint" instruction we conclude that when defense counsel objected to the court's proposed use of the former CALCRIM No. 1802, she referred to the one intention, one general impulse, and one plan *Bailey* language. She sought "added information and the additional pinpoint" which she believed was "vital to support the current case law." The court had previously referenced the "pinpoint" as the language "we already apparently had." The language of the instruction the jury "already. . . had" was the "one intention, one general impulse, and one plan" language from *Bailey*. (*Bailey, supra*, 55 Cal.2d at p. 519.) Thus, the defense counsel's reference to "pinpoint" was an objection to the absence of that language, therefore, the defense did not forfeit the issue on appeal.

14

during closing argument that grand theft occurs when "the combined value was over $950; and in obtaining the property, the defendant was motivated by one intention, one general impulse, and one plan . . . It's three things. They are put together with an 'and,' so you need all three:  Intention, general impulse, and plan."  The court's reinstruction, however, required "a single, overall plan *or* objective."  As a whole, the court's answer to the jury's question explained that the jury could not find only one count of grand theft for the entire two-plus-year period.  The court also communicated a rule making it easier to find three separate counts than previously instructed and argued.  Cumulatively, the court's omissions from the answer to the jury question and the reinstruction using an outdated CALCRIM No. 1802, which was irrelevant to the question, further confused the jury's understanding of aggregating grand thefts.  We hold the court's response to the jury question amounted to an abuse of discretion because "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  We must reverse the grand theft counts.

## DISPOSITION

We reverse Jimenez's grand theft convictions on counts 1, 2, and 6 and remand for further proceedings not inconsistent with this opinion. We affirm the judgment as to counts 3, 4, 5, and 7.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.

16