Filed 2/9/26  P. v. Smith CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HAYLEYANN SMITH,<br><br>    Defendant and Appellant. | H052440<br>(Santa Clara County<br>Super. Ct. No. C1894414) |

Defendant Hayleyann Smith was convicted by jury of two counts of grand theft and two counts of embezzlement.  The jury also found true an allegation that the offenses involved an aggregate taking of more than $100,000, for which the trial court imposed a two-year sentencing enhancement under Penal Code section 186.11 and a former version of Penal Code section 12022.6.  (Unspecified statutory references are to the Penal Code.)  On appeal, defendant contends her convictions must be aggregated into one count of grand theft and one count of embezzlement because the offenses were committed as parts of a single plan.  She also argues the sentencing enhancement must be reversed due to the repeal of former section 12022.6, or alternatively reduced to one year because a two-year enhancement could only be imposed based on facts not found by the jury.  As we will explain, we conclude defendant's convictions should stand and a sentencing enhancement could be applied in her case under section 186.11.  But we agree with defendant that the two-year enhancement must be reduced to one year.  We will thus reverse the judgment and remand for resentencing.

# I.   BACKGROUND

Defendant was charged with two counts of grand theft (§ 487, subd. (a); counts 1 and 2) and two counts of embezzlement (§ 503; counts 3 and 4).  It was alleged that the offenses constituted "a pattern of related felony conduct," as defined in section 186.11, involving a taking of more than $100,000 but not more than $500,000.

## A.  PROSECUTION CASE

Jerry Dong met defendant on a dating website in 2012, and they went on several dates that year.  In August 2012, Dong suffered a brain injury in a bicycle accident.  Defendant visited him while he was hospitalized.  Defendant talked to Dong about making him part of her "family" and them "taking care of" one another.  After Dong was released from the hospital, defendant moved in with him and his former housemate moved out.  Dong paid defendant about $3,000 or $4,000 per month to act as his caretaker.  Defendant introduced Dong to her daughter, Leyah Gibson, who defendant said was a bookkeeper.  Dong hired Gibson to help him manage his finances and paid her about $1,000 or $2,000 per month.

In 2013, defendant suggested to Dong that they purchase a business together.  Defendant proposed purchasing a bar and grill in San Clemente and said she could manage the business.  Gibson, who lived near the business, would serve as its bookkeeper.  Dong agreed and withdrew approximately $380,000 from various investment accounts to purchase the business and a liquor license.  Defendant and Dong agreed that Dong would initially own 90 percent of the business and defendant would own 10 percent.  If the business was successful, defendant's ownership share could increase to 50 percent.  Dong intended that monthly salaries for himself and defendant would be determined after all business expenses were paid.  Although Dong asked defendant for monthly profit and loss statements, which defendant said she would have Gibson prepare, Dong never received them.

Defendant opened a bank account for the business. Bank records indicated defendant was the sole owner and signatory associated with the business account. Dong requested access to the account, but defendant denied him access. Defendant and Dong did not discuss defendant's living arrangements, and Dong understood that the business account would not be used for personal expenses. Dong provided defendant with a Macy's credit card to purchase work-appropriate attire. Defendant was generally evasive when Dong asked her for updates about the business, and he did not think she was managing the business well.

At some point, defendant told Dong the restaurant had black mold and she was withholding rent as a result. In December 2013, after the property owner won a judgment against the business, Dong asked defendant whether the business would have enough money to pay its rent the following month. Defendant replied that she was " 'waiting for the 90,000.' " She later sent Dong another message saying, " 'The 90,000 just got deposited.' " At the time, Dong did not know what defendant was referring to. Later, in June 2014, Dong was notified of a lawsuit being filed against him relating to a $90,000 loan that had been obtained in his name. Dong testified that he was not aware of the loan and had not authorized the loan application. An expert in "forensic document examination" testified that it was "highly probable" Dong did not sign the application.

Bank records showed that in 2013 and 2014, 37 direct transfers totaling $117,000 were made from the business bank account to defendant's personal account. Over the same time period, 42 cash withdrawals totaling $80,463.92 were made from the business account. The business account was used for personal expenses (as determined by a forensic accounting expert) totaling $45,024.22. Defendant also paid five months of rent for her personal residence using $15,000 from the business account.

## B. DEFENSE CASE

Defendant testified on her own behalf. She said she met defendant in 2011 and moved in with him after he was released from the hospital in 2012. While defendant was

3

living with Dong, he asked her to marry him. Defendant said it was Dong who had suggested they purchase a business together. After they purchased the restaurant, defendant moved to San Clemente. Defendant acknowledged having paid rent for her personal residence using money from the business bank account, but said Dong had agreed to that arrangement. She also acknowledged purchasing clothing with a business credit card on several occasions, but said the purchases were work-related. Defendant recalled paying $20,000 or $30,000 to address the restaurant's black mold problem, and said most of those payments were made in cash with money from the business account. She did not recall transferring any money from the business account to her personal account.

Defendant's daughter Gibson had "credit problems" that meant she could not "sign on to" the business bank account, but defendant testified that she shared the account information with Gibson and gave Gibson "full access" to the account for bookkeeping purposes. Defendant said she also gave Gibson access to her personal account. Gibson handled financial matters for both defendant and the business, and defendant said she did not regularly review bank statements because she was "too busy." At some point, defendant realized Gibson was stealing money from the business and not paying its bills. Defendant believed Gibson had transferred money from the business account into defendant's personal account and forged defendant's signature on numerous unauthorized checks. Gibson also had access to defendant's cell phone, and defendant believed Gibson had used her phone to send Dong a text message about the $90,000 loan. Defendant said she did not apply for the loan and learned of it only after a lawsuit was filed against her.

## C. VERDICT AND SENTENCING

The jury found defendant guilty on all four counts. It also found true the allegation that the offenses involved "a pattern of related felony conduct" and a taking of more than $100,000 but not more than $500,000. The trial court sentenced defendant to three years four months in prison, consisting of a 16-month lower term on count 1 plus a

4

two-year white collar crime enhancement. (§ 186.11, subd. (a)(3); see former § 12022.6, subd. (a)(2) (Stats. 2010, ch. 711, § 5).) Defendant stipulated to $953,661.82 in victim restitution owed to Dong. Lower term sentences on counts 2, 3, and 4 were imposed and stayed under section 654.

## II. DISCUSSION

### A. THE CONVICTIONS NEED NOT BE AGGREGATED

Defendant contends her four convictions must be merged into two: one count of grand theft and one count of embezzlement. She bases her contention on *People v. Bailey* (1961) 55 Cal.2d 514, 519, in which the California Supreme Court stated that "a defendant may be properly convicted upon separate counts charging grand theft from the same person if the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan." Courts consistently interpreted *Bailey* as holding "that multiple acts of grand theft pursuant to a single scheme cannot support more than one count of grand theft" until the California Supreme Court's decision in *People v. Whitmer* (2014) 59 Cal.4th 733, 742 (*Whitmer*). *Whitmer* disapproved those cases' interpretation of *Bailey* and held that "a defendant may be convicted of multiple counts of grand theft based on separate and distinct acts of theft, even if committed pursuant to a single overarching scheme." (*Whitmer*, at p. 735.) "But given the numerous, and uncontradicted, Court of Appeal decisions" stating otherwise over a period of many years, the Supreme Court concluded that its holding should apply only prospectively. (*Id.* at p. 742.)

The parties correctly agree that because the offenses alleged here were committed before *Whitmer* was decided in July 2014, we must apply *Bailey* and its pre-*Whitmer* progeny. Under that line of cases, a defendant's convictions on multiple theft counts must be aggregated if there is no evidence "from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan." (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984 (*Jaska*).)

5

"However, *Bailey* does not prohibit multiple convictions where the defendant commits a series of thefts based on *separate* intents, even if the defendant acts pursuant to the *same* intent on each occasion." (*Id.,* at p. 984.) In *Jaska*, for example, multiple theft convictions were upheld where evidence suggested the defendant "stole various sums of money in an opportunistic manner, essentially whenever the need and/or occasion arose." (*Id.* at p. 985.) Here, the jury could have reached a similar conclusion. There was evidence that defendant used multiple methods to steal and embezzle money from Dong and the business through dozens of separate transactions over a period of months. Given that evidence, defendant cannot show that her convictions must be aggregated as a matter of law. (*Ibid.*)

We note that the jury's true finding on the section 186.11 allegation does not affect our analysis of the aggregation issue. Defendant asserts that because the jury found she engaged in a pattern of related felony conduct, it must have found that the offenses were committed as parts of a single plan. She relies on language from *Whitmer* stating that under the circumstances of that case, the jury's true finding on an enhancement allegation under former section 12022.6 (*not* section 186.11) meant it "necessarily found that the grand thefts arose 'from a common scheme or plan.' " (*Whitmer*, *supra*, 59 Cal.4th at p. 742.) Former section 12022.6, subdivision (b) provided that victim losses from multiple theft offenses could be aggregated to determine the proper sentencing enhancement under that statute if the losses arose "from a common scheme or plan." (Stats. 2010, ch. 711, § 5.) Significantly, section 186.11 contains no such requirement. Section 186.11 defines a "pattern of related felony conduct" more expansively as "engaging in at least two felonies that have the same or similar purpose, result, principals, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics, and that are not isolated events." (§ 186.11, subd. (a)(1).) The jury did not find that the offenses arose "from a common scheme or plan" under former section 12022.6; rather, the jury found "a pattern of related felony conduct" under

6

section 186.11 which does not preclude a finding that defendant "acted pursuant to more than one intention, one general impulse, or one plan." (*Jaska*, *supra*, 194 Cal.App.4th at p. 984.)

## B. THE REPEAL OF FORMER SECTION 12022.6 DOES NOT BAR THE ENHANCEMENT

The jury found true an allegation under section 186.11 that defendant engaged in a pattern of related felony conduct. Section 186.11, subdivision (a) specifies the sentencing enhancement to be imposed under such circumstances: "If the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than five hundred thousand dollars ($500,000), the additional term of punishment shall be two, three, or five years in the state prison." (§ 186.11, subd. (a)(2).) "If the pattern of related felony conduct involves the taking of, or results in the loss by another person or entity of, more than one hundred thousand dollars ($100,000), but not more than five hundred thousand dollars ($500,000), the additional term of punishment shall be the term specified in paragraph (1) or (2) of subdivision (a) of Section 12022.6." (§ 186.11, subd. (a)(3).)

Section 12022.6 provides for its own sentencing enhancements in felony cases involving property loss or damage. Until January 1, 2018, former section 12022.6, subdivision (a) provided a one-year enhancement for losses exceeding $65,000 and a two-year enhancement for losses exceeding $200,000. (Stats. 2010, ch. 711, § 5.) On January 1, 2018, former section 12022.6 was repealed in accordance with former section 12022.6, subdivision (f), which read: "It is the intent of the Legislature that the provisions of this section be reviewed within 10 years to consider the effects of inflation on the additional terms imposed. For that reason this section shall remain in effect only until January 1, 2018, and as of that date is repealed unless a later enacted statute, which is enacted before January 1, 2018, deletes or extends that date." (Stats. 2010, ch. 711, § 5.) A new version of section 12022.6 had not been enacted at the time defendant was

7

prosecuted, convicted, and sentenced. She thus argues that no enhancement could be imposed in her case under section 186.11, subdivision (a)(3), which incorporated the penalty provisions of former section 12022.6, subdivision (a). Because former section 12022.6 was in effect when defendant committed her offenses in 2013 and 2014 but was repealed before she was sentenced in 2024, we consider whether the Legislature intended that she be subject to the penalty provisions incorporated in section 186.11, subdivision (a)(3). (See *In re Pedro T.* (1994) 8 Cal.4th 1041, 1045; *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1286.)

Other courts have rejected similar arguments where the enhancements were imposed under former section 12022.6, not section 186.11. In *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 336, the jury found true an allegation under former section 12022.6. Although Abrahamian was sentenced in March 2018, after former section 12022.6 was repealed, the Court of Appeal upheld a two-year enhancement imposed under the repealed statute. (*Abrahamian*, at pp. 336–338.) The *Abrahamian* court reasoned that the Legislature's apparent intent in enacting former section 12022.6 was "to apply the provision's enhanced punishment to offenses committed throughout its effective period." (*Abrahamian*, at p. 337.) Similarly, in *People v. Medeiros* (2020) 46 Cal.App.5th 1142, 1147, former section 12022.6 was repealed after Medeiros committed his offenses but before he was sentenced in September 2018. The Court of Appeal upheld an enhancement imposed under former section 12022.6 because "the text of the statute and history of the legislation make clear that the purpose of section 12022.6 was to provide harsher penalties for theft of high dollar amounts of property as an important tool for law enforcement in combatting white collar crime." (*Medeiros*, at p. 1154.) "The express language *of the sunset provision* itself states its purpose is to allow the Legislature to review the threshold amounts of the enhancement for inflation, not to allow the Legislature to consider whether the enhancements should continue to apply or whether the statute should be repealed." (*Ibid.*)

Defendant attempts to distinguish her case from *Abrahamian* and *Medeiros* by noting that former section 12022.6 had already been repealed at the time she was criminally charged in 2018, whereas it was still in effect when Abrahamian and Medeiros were charged and was repealed during the pendency of their cases. But defendant does not explain why the date of the pleading is more significant for sentencing purposes than the date of sentencing, and we do not see that an immaterial distinction should affect our analysis. To the extent this case does meaningfully differ from *Abrahamian* and *Medeiros*, the differences do not support defendant's argument. Abrahamian and Medeiros received enhanced sentences based on allegations found true under former section 12022.6, which was repealed before their sentencing dates. Although the length of defendant's sentencing enhancement also appears to have been based on the penalty provisions of former section 12022.6, the enhancement imposed derived from an allegation found true under section 186.11. A conclusion that *no* enhancement could be imposed based on the jury's finding under section 186.11—even though *that* section remained in effect at the time of sentencing—would render the language of section 186.11, subdivision (a)(3) superfluous. We see nothing to suggest the Legislature intended that result.

### C. ONLY A ONE-YEAR ENHANCEMENT WAS AUTHORIZED

Alternatively, defendant contends the enhancement imposed must be reduced from two years to one year. She notes that the penalty provisions of former section 12022.6 required more than $200,000 in losses for a two-year enhancement to be imposed, while losses of more than $65,000 but not more than $200,000 provided for a one-year enhancement. (Stats. 2010, ch. 711, § 5.) Following the structure of section 186.11, subdivision (a), the jury found that defendant's takings totaled more than $100,000 but not more than $500,000; the jury was not asked whether defendant's takings exceeded $200,000.

9

The Attorney General appears to suggest the trial court had discretion to make its own finding as to the amount of loss for sentencing purposes, but there is no indication in the record that defendant waived her right to a jury trial on that issue. To the contrary, the jury *was* asked to make a finding as to the amount of loss—but its finding does not include the specific information required to support a two-year enhancement. Although a forensic accounting expert testified that total takings from the business account exceeded $250,000, defendant testified that she was not the only one with access to the account. She also disputed the expert's characterization of certain expenses as personal rather than business-related, and testified that Dong had agreed she could use money from the business account to pay the rent for her personal residence (where she had moved in order to manage the business). Had the jury been asked whether defendant's takings exceeded $200,000, there was evidence from which it could have found the allegation not true.

Because the jury found defendant's takings exceeded $100,000 but was not asked whether they exceeded $200,000, only a one-year enhancement could be imposed under section 186.11 (incorporating former section 12022.6). We will therefore reverse the judgment and remand the matter for a new sentencing hearing.

## III. DISPOSITION

The judgment is reversed and the matter is remanded for resentencing.

10

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H052440
*The People v Smith*